**PANHANDLE & S. F. RY. CO. et al. v. McCRUMMEN.    (No. 1933.)**

(Court of Civil Appeals of Texas. Amarillo. March 22, 1922. Rehearing Denied April 19, 1922.)

1. **Carriers ⊕230(3) — Peremptory charge concerning delay at point of embarkation properly refused.**

In action against carrier for injuries to cattle, court *held*, under the evidence, to have properly refused to peremptorily instruct the jury not to consider delay at point of embarkation.

2. **Carriers ⊕230(1)—Whether shipper was negligent in loading cattle held for jury.**

In action against carrier for injuries to cattle, due to delay and other causes, whether shipper was negligent in loading the cattle the night before shipment *held* for the jury.

3. **Appeal and error ⊕1068(5)—Failure to instruct held not prejudicial.**

In action against carrier for injuries to cattle through unreasonable delay and other cause, any error of the court in refusing to instruct the jury not to consider delay at point of shipment *held* not to have prejudiced the defendant, where there was no objection that verdict was excessive, and only effect of instruction would be to reduce damages.

4. **Carriers ⊕170—Connecting carriers agents for one another.**

If freight is transported, after having been received by one connecting carrier on a contract recognized and acted on, the agency of the carriers for each other is established under Rev. St. 1911, arts. 731, 732, as amended by Acts 36th Leg. (1919) c. 165 (Vernon's Ann. Civ. St. Supp. 1922, arts. 731, 732).

5. **Carriers ⊕173—Only one bill of lading by initial carrier authorized for entire carriage.**

Under Rev. St. 1911, arts. 731, 732, as amended by Acts 36th Leg. (1919) c. 165 (Vernon's Ann. Civ. St. Supp. 1922, arts. 731, 732), an initial carrier is authorized to issue a through bill of lading binding on it and the connecting carriers, and this is the only bill or receipt authorized for the entire shipment, and one issued by a connecting carrier is of no binding force or effect unless on a new or independent consideration moving to the shipper.

---

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Carriers ☞180(2)—Stipulation limiting liability of connecting carrier's own line held void.**

Under Rev. St. 1911, arts. 731, 732, as amended by Acts 36th Leg. (1919) c. 165 (Vernon's Ann. Civ. St. Supp. 1922, arts. 731, 732), a bill of lading subsequent to that issued by the initial carrier must be supported by a valuable consideration, and, unless the consideration is proven, a stipulation limiting to its line of road the damages sustained by the negligence of the carrier guilty thereof is void.

**7. Carriers ☞219(5)—Shipper has joint cause of action against all connecting carriers.**

Under Rev. St. 1911, arts. 731, 732, as amended by Acts 36th Leg. (1919) c. 165 (Vernon's Ann. Civ. St. Supp. 1922, arts. 731, 732), a shipper over connecting roads has a joint cause of action against all of the carriers or any one for the entire damages sustained through negligence under transportation covered by the initial contract.

Appeal from Lubbock County Court; P. F. Brown, Judge.

Action by W. L. McCrummen against the Panhandle & Santa Fé Railway Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Terry, Cavin & Mills, of Galveston, Wilson & Douglas, of Lubbock, and Madden, Trulove, Ryburn & Pipkin, of Amarillo, for appellants.

Vickers & Campbell, of Lubbock, for appellee.

HUFF, C. J. This action was brought by appellee, McCrummen, against the Panhandle & Santa Fé Railway Company and J. L. Lancaster and Charles L. Wallace, receivers for the Texas & Pacific Railway Company and the Gulf, Colorado & Santa Fé Railway Company, for damages to a shipment of 43 head of Jersey milk čows, from Paris, Tex., to Lubbock, Tex., in which it is alleged substantially that the cattle were loaded at Paris on cars furnished at that point by the Gulf, Colorado & Santa Fé Railway Company, at which time the railway company issued a bill of lading therefor and contracted to transport the cattle and deliver them to plaintiff at Lubbock, Tex., and that it was the contract and agreement between appellee and that company for the cattle to be transported over its line of railway and the connecting carriers, the other two defendants, to Lubbock, Tex., and to pay freight charges therefor, and said contract was recognized, acquiesced in, and acted upon by the said receivers of the Texas & Pacific Railway Company and the Panhandle & Santa Fé Railway Company, and that the defendants and each of them were under obligations and duty to properly transport the cattle to destination with due diligence and to exercise all care in handling the cattle so as to prevent injury and damages thereto. The damages claimed were for two head of cattle killed of the value of $100 each, and damage to the others in the sum of $795. The verdict and judgment were rendered for $600. The negligence alleged was rough handling and unreasonable and unnecessary delay. The written contract in evidence shows to have been executed by the initial carrier, Gulf, Colorado & Santa Fé Railway Company, at Paris, Tex., in which the company agreed to transport for the shipper the live stock described below, together with the parties in charge thereof by one car, said to contain 43 head of stock cattle from Paris, Tex., to Lubbock, Tex., consigned to W. L. McCrummen. The contract was signed by the agent at Paris, for the initial company and W. L. McCrummen, the shipper, and that the cattle were valued at $100 per head. The defendants in the court below set up certain provisions of the contract executed at Paris and relying upon the same as part of their defense. A provision of the contract read as follows:

"Each carrier en route shall receive such stock when delivered to it and transport the same over its road to a succeeding carrier and the responsibility of each carrier shall not begin until it receives such stock from the consignor or from the connecting carrier—the guarantee of any through rate shall not in any wise be construed to extend the liability of the company beyond its road, and after delivery or tender thereof except as hereinabove stated. The live stock covered by this contract is not to be transported within any specific time nor delivered at destination at any particular hour, nor in season for any particular market"—and several other provisions not necessary to set out.

[1-3] The first proposition of appellants will be overruled. We do not think the charge of the court placed upon the defendants an undue burden, or that it was in conflict with special charge No. 4, requested and given by the court. The second proposition is to the effect that the trial court erred in refusing to give special charge No. 6, to the effect that in estimating the delay in shipment of the plaintiff's cattle the jury would not consider the time plaintiff's cattle were in the car at Paris prior to shipment and that the cattle were standing in the car at Paris all night as they were loaded by plaintiff into the car with notice that they would not be shipped until 7 a. m. the next morning. We do not believe the trial court, under the evidence in this case, would have been justified in peremptorily instructing the jury not to consider such delay. It seems from the appellee's testimony that the railroad company notified him that the car was ready and spotted for the purpose of loading on the 16th day of March, 1920, and that in pursuance to that notice he proceeded at once to load the cattle into the car, and upon

his doing so the agent at that place examined the cattle as loaded, accepted the loading of the cattle on that evening, and issued a bill of lading, but the cattle were not moved out until the next morning. The charge did not request that the issue of contributory negligence on the part of the appellee in loading the cattle that afternoon be submitted for a finding by the jury. At most, we think, it was an issue of fact for the determination of the jury as to whether appellee was negligent in loading the cattle when he did under the circumstances he did and that the court would not have been justified in withdrawing that issue from the consideration of the jury in assessing damages. We are unable to perceive any injury that resulted to the appellants by failure to give the charge, or at least there is no objection on the ground that the verdict is excessive. All that could have been gained by the charge would have been to have reduced the damages claimed. The plaintiff did not recover the amount sued for by something over $300. We think no injury has resulted by failure to give the charge, if it had been a proper one, in the first place. The proposition and assignment will be overruled.

The third proposition is to the effect that the evidence shows that plaintiff's cattle were shipped under a contract which limited the liability of each carrier to its own line of railroad and that such contract was duly pleaded by each of the defendants and was introduced in evidence, and the defendants, therefore, had the right to have their liability separately determined. The court declined to permit the jury to apportion the liability, but under its charge a joint and several judgment was entered against all of the defendants for the entire damage. As to each of the appellant roads, special issues were requested to the effect asking the jury to find whether that particular road exercised ordinary care in transporting the cattle over its line of road. These charges were refused.

[4, 5] Articles 731 and 732, Revised Civil Statutes, were amended by the Thirty-Sixth Legislature, General Laws, c. 165, p. 320 (Vernon's Ann. Civ. St. Supp. 1922, arts. 731, 732). The amendment substantially changes the original articles evidencing, we think, an intention to make the contract of the initial carrier binding upon connecting carriers over whose lines the shipment is transported. The amendment of article 731, it will be noted in the first part thereof, changes the wording of the act so that perhaps the original interpretation of the act would not be applicable under that change. Under the old law the receipt of freight for transportation, if acquiesced in, recognized, or acted upon, by such carriers they would be held to be connecting carriers and agents of each other and to have contracted with the shipper while under the amendment common carriers

240 S.W.—39

over whose lines "is transported freight" received by either for shipment on a contract. If freight is transported, after having been received by either carrier upon a contract recognized and acted upon, the agency of the carriers for each other is established. The following clause is added by the amendment:

"The provisions of this act shall apply whether the routine [routing] of such freight, baggage or other property be chosen by the owner or his agents, or by the initial carrier to whom such property is delivered and in any suit brought hereunder, the rights, duties, liabilities of the parties shall be determined by the initial contract executed by and between the owner, shipper or his or her duly authorized agents and the initial carrier, unless it be proved that a subsequent contract supported by a valuable consideration moving to the owner or shipper, in addition to that of the initial contract, was executed by such owner, shipper or his or their duly authorized agents with a subsequent connecting carrier handling the shipment, and the transportation of a caretaker shall not be deemed to be such valuable consideration."

It is provided by the article in any courts of this state the issue of a bill of lading, waybill, check, or receipt, or other proof by either of the carriers, showing they have received the freight, shall constitute prima facie evidence "of the subsistence of the relations, duties, and liabilities of such carrier as herein defined and prescribed, notwithstanding any stipulations or attempted stipulations to the contrary by such carrier, or either of them and any stipulation contained in any contract contrary to any of the provisions of this Act shall be void." The amendment adds the latter clause, "and any stipulation contained in any contract contrary to any of the provisions of this Act shall be void." Article 732, as amended, provides that article 1830, subd. 25, allowing apportionment of damages, shall not be applicable to persons bringing suits under the provisions of the act, "except upon the plaintiff's request." Any carrier held liable under the provision of the act may bring a subsequent suit to recover an amount, which it is compelled to pay, occasioned by the negligence of the carrier guilty thereof. An initial carrier is authorized to issue a through bill of lading, binding upon it and the connecting carrier as well. This is the only bill or receipt authorized for the entire shipment, and one issued by a connecting carrier is of no binding force or effect unless upon a new or independent consideration moving to the shipper. Evidently by this addition to the amendment it was intended to adopt the same rule applied in interstate shipments under the Interstate Commerce Act (U. S. Comp. St. § 8563 et seq.) Railway Co. v. Ward, 244 U. S. 383, 37 Sup. Ct. 617, 61 L. Ed. 1213; Railway Co. v. Word (Tex. Civ. App.) 159 S. W. 375 (3–5).

It is apparent, we think, that the added

clause was intended to, meet the holdings of our courts that, where the connecting carrier required the shipper to sign a new receipt or bill of lading over its line of road, this was evidence that that road did not acquiesce in, recognize, or act under the original contract of shipment, and therefore under the original act there was no contract for through shipment under such circumstances, or making one carrier the agent for each and for all or permitting suit against one of them for the entire damages sustained in the transportation. Such in effect are the holdings of the courts under the former statute. Railway Co. v. Short (Tex. Civ. App.) 51 S. W. 261; Railway Co. v. Jones, 104 Tex. 92, 134 S. W. 328, as well as several other cases, some of which appellants cite.

[6] Under the amended act a subsequent bill of lading must be supported by a valuable consideration moving toward the shipper or owner, and the fact must be proven in order to defeat the prima facie case of a through shipment made upon the contract of the common agent of the connecting carriers in the shipment. Unless the consideration is so proven, the stipulation limiting to its line of road the damages sustained by the negligence of the carrier guilty thereof is void by the express declaration of the amendment.

[7] The amendment of article 732 further evidences this purpose by declaring there can be no apportionment of damages as prescribed under article 830, subd. 25, "except upon the plaintiff's request," clearly giving the plaintiff a joint cause of action against all of the carriers or any one for the entire damages sustained under the transportation covered by the initial contract.

The cases cited by the appellant from this court, Ry. Co. v. Hill, 213 S. W. 952, and Railway Co. v. Clarendon, etc., 215 S. W. 866, were decided under the Interstate Commerce Act, which renders the initial carrier liable for the entire damages, but, as to connecting carriers, the common-law liability was unaffected, when sued for by the shipper. This court had held that construction in Railway Co. v. Boyce, 171 S. W. 1094, where the act of Congress is quoted. The act here construed is quite different from the act of Congress. Under article 732, as amended, damages sustained anywhere during the transportation, either or all of such connecting carriers shall be held liable to such shipper therefor, and apportionment cannot be had "except upon the plaintiff's request." Those cases are therefore not authority in cases arising under the state statute and for intrastate shipments. In the unreported decision of John C. Davis v. McCrummen, by this court,' we did not reverse that case because there was no apportionment of the damages. We did not reverse at all. We did suggest, however, that there was no through contract

of shipment acquiesced in or recognized. We did this under the old law without at that time noting or being directed to the amendment here quoted, or in any way discussing that act with reference thereto. We considered the case under the federal act providing for the termination of federal control under the act of Congress, February 28, 1920 (41 Stat. 456). That decision, therefore, is not upon the construction of the amendment of the articles here under consideration.

We find no reversible error, and the judgment will be affirmed.