WALL, ADMINISTRATOR, RESPONDENT, *v.* NORTHERN PACIFIC RY. CO., APPELLANT.

(No. 3,439.)

(Submitted September 27, 1916.   Decided December 1, 1916.)

[161 Pac. 518.]

[On Remand from Supreme Court of United States.]

[For original opinion, see 50 Mont. 122, 145 Pac. 291.]

*Common Carriers—Livestock—Transportation—Interstate Commerce—Bills of Lading—Waiver—Appeal and Error—Theory of Case—Federal Question—General Verdict—Conclusiveness.*

Interstate Commerce—Bills of Lading—Waiver.
  1.   A carrier engaged in interstate commerce cannot, under the Interstate Commerce Act, waive compliance with the requirement in a bill of lading making it incumbent on the shipper of cattle, as a condition precedent to his right to recover damages for injury to them while in transit, to give notice in writing of his claim before they are removed from the place of destination or mingled with other stock.

Appeal and Error—Theory of Case—Federal Question.
  2.   The rule of practice that parties cannot on appeal change the theory on which the cause was tried in the lower court must give way where the theory entertained by court and parties on the trial of the cause had to do with a federal question theretofore adversely decided by the supreme court of the United States.

  [As to jurisdiction of action for damages for violation of Interstate Commerce Act, see note in **Ann. Cas. 1912A, 613.**]

Same—General Verdict—Conclusiveness.

3. Where an action against a railroad for injury to cattle while in transit was based on three different items of damage, and it is impossible to determine from the record what particular items were considered by the jury in returning a verdict in a lump sum, the supreme court cannot direct judgment awarding damages for any one of the items, and thus substitute its findings for those of the jury.

*Messrs. Gunn, Rasch & Hall* and *Messrs. Hartman & Hartman,* for Appellant, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

*Mr. Walter Aitken,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

When this cause came before this court on appeal from the district court of Gallatin county, we reached the conclusion that the provision in the bill of lading which required the shipper, as a condition precedent to his right to recover damages for any injury to the cattle while in transit, to give notice in writing of his claim before the cattle were removed from the place of destination or mingled with other stock, was unreasonable and void, and affirmed the judgment in favor of the plaintiff. (*Wall v. Northern Pac. Ry. Co.,* 50 Mont. 122, 145 Pac. 291.) The [1] question whether the carrier had waived compliance with that provision was submitted to the jury in the trial court, and the verdict was apparently based upon a finding that such compliance had been waived. In this court we deemed the question of waiver immaterial and gave it no consideration. When the cause was removed by writ of error to the supreme court of the United States, that court reversed our judgment and held, in effect, that the provision in the bill of lading to which reference has been made was reasonable and valid, and remanded the cause for further proceedings. (*Northern Pac. Ry. Co. v. Wall,* 241 U. S. 87, 60 L. Ed. 905, 36 Sup. Ct. Rep. 493.) Reference is made in the opinion to the fact that the question of waiver was litigated in the trial court, but not considered in this court. Counsel for plaintiff now insists that this court review the evi-

dence touching the question of waiver, and, if we find it sufficient to justify the verdict, that we again affirm the judgment, and argues that this was the intention of the supreme court of the United States in remanding the cause, with the directions contained in the mandate. We are met with the contention by counsel for the carrier that such could not have been the intention of the supreme court, for the reason that compliance with the provision of the bill of lading in question could not be waived by the carrier, and that the supreme court had theretofore and has since held that compliance with like terms of contracts of interstate shipments cannot be waived.

In many instances the supreme court has had occasion to consider the Commerce Act and its amendments, generally with reference to deviations from the established rates, and to indicate the broad purpose to be served by that legislation.

In *New York, New Haven & H. R. Co.* v. *Interstate Commerce Comm.*, 200 U. S. 361, 50 L. Ed. 515, 26 Sup. Ct. Rep. 272, that court said: ''It cannot be challenged that the great purpose of the Act to regulate commerce, whilst seeking to prevent unjust and unreasonable rates, was to secure equality of rates as to all and to destroy favoritism, these last being accomplished by requiring the publication of tariffs and by prohibiting secret departures from such tariffs, and forbidding rebates, preferences, and all other forms of undue discrimination. * * * If the public purpose which the statute was intended to accomplish be borne in mind, its meaning becomes, if possible, clearer. What was that purpose? It was to compel the carrier as a public agent to give equal treatment to all.''

In *Armour Packing Co.* v. *United States,* 209 U. S. 56, 52 L. Ed. 681, 28 Sup. Ct. Rep. 428, the court said: ''The Elkins Act proceeded upon broad lines, and was evidently intended to effectuate the purpose of Congress to require that all shippers should be treated alike, and that the only rate charged to any shipper for the same service under the same conditions should be the one established, published and posted as required by law. It is not so much the particular form by which or the motive for

which this purpose was accomplished, but the intention was to prohibit any and all means that might be resorted to to obtain or receive concessions and rebates from the fixed rates, duly posted and published.''

In *Chicago & Alton R. R. Co.* v. *Kirby*, 225 U. S. 155, Ann. Cas. 1914A, 501, 56 L. Ed. 1033, 32 Sup. Ct. Rep. 648, where the shipper was relying upon a special oral contract that his stock should be taken by a particular fast train, the court quoted with approval the excerpt from the opinion in the *Armour Case* above, as justification for its conclusion that such a special contract was invalid, and further said: ''The broad purpose of the Commerce Act was to compel the establishment of reasonable rates and their uniform application. That purpose would be defeated if sanction be given to a special contract by which any such advantage is given to a particular shipper as that contracted for by the defendant in error. To guarantee a particular connection and transportation by a particular train was to give an advantage or preference not open to all and not provided for in the published tariffs.''

In a somewhat similar case, *Kansas City Southern Ry. Co.* v. *Carl*, 227 U. S. 639, 57 L. Ed. 683, 33 Sup. Ct. Rep. 391, the court said: ''Nor can a carrier legally contract with a particular shipper for an unusual service, unless he make and publish a rate for such service equally open to all.''

Another case, very similar in its facts to the *Kirby Case* above, is *Atchison, T. & S. F. Ry. Co.* v. *Robinson*, 233 U. S. 173, 58 L. Ed. 901, 34 Sup. Ct. Rep. 556. There the court said: ''If oral agreements of this character can be sustained, then the door is open to all manner of special contracts, departing from the schedules and rates filed with the commission. (*Kansas City Southern Ry. Co.* v. *Carl*, 227 U. S. 639, 652 [33 Sup. Ct. Rep. 391, 57 L. Ed. 683].) To maintain the supremacy of such oral agreements would defeat the primary purposes of the Interstate Commerce Act, so often affirmed in the decisions of this court, which are to require equal treatment of all shippers and

the charging of but one rate to all, and that the one filed as required by the Act.''

In *Phillips Co.* v. *Grand Trunk W. R. Co.*, 236 U. S. 662, 59 L. Ed. 774, 35 Sup. Ct. Rep. 444, there was presented the question whether, in an action by a shipper to recover for freight overcharges, where it appeared from the face of the complaint that the action had not been commenced within the time limited by the Hepburn Amendment, the objection could be raised by general demurrer. The court held that under the statute the lapse of time not only bars the remedy, but destroys the liability, and said: ''This will more distinctly appear by considering the requirements of uniformity, which, in this as in so many other instances, must be borne in mind in construing the Commerce Act. The obligation of the carrier to adhere to the legal rate, to refund only what is permitted by law and to treat all shippers alike, would have made it illegal for the carriers, either *by silence or by express waiver*, to preserve to the Phillips Company a right of action which the statute required should be asserted within a fixed period. To have one period of limitation where the complaint is filed before the Commission and the varying periods of limitation of the different states, where a suit was brought in a court of competent jurisdiction; or to permit a railroad company to plead the statute of limitations as against some and to waive it as against others, would be to prefer some and discriminate against others in violation of the terms of the Commerce Act, which forbids all devices by which such results may be accomplished. The prohibitions of the statute against unjust discrimination relate, not only to inequality of charges and inequality of facilities, but also to the giving of preferences by means of consent judgments or the waiver of defenses open to the carrier. The railroad company, therefore, was bound to claim the benefit of the statute here, and could do so here by general demurrer.''

In *Georgia, F. & A. Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190, 60 L. Ed. 948, 36 Sup. Ct. Rep. 541, there was presented the question whether by its wrongful act the carrier could abandon

the contract of shipment and render itself liable in the event the shipper had failed to make claim within the time limited for such purpose by the bill of lading. The court said: "It is urged, however, that the carrier, in making the misdelivery, converted the flour and thus abandoned the contract. But the parties could not waive the terms of the contract under which the shipment was made pursuant to the federal Act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the Act and open the door to the very abuses at which the Act was aimed."

In *Banaka* v. *Missouri Pac. Ry. Co.,* 193 Mo. App. 345, 186 S. W. 7, the court of appeals of Missouri had under consideration the question whether an interstate carrier can waive the requirement in the bill of lading that notice of claim for damages must be presented within a certain specified time, and said: "But plaintiff relies upon a waiver of the notice by conduct. That is to say, defendant by its acts and conduct waived its privileges with respect to notice in this: That it accepted and received plaintiff's claim without protest or complaint, after the limitation of four months had expired, and that it treated with plaintiff since four months after a reasonable time for delivery had expired, and declined to pay on other grounds than want of notice. The federal Commerce Act is designed to prevent discrimination between shippers, and its object is to nullify any device whereby the carrier may practice favoritism between them." The court refers to the language employed in the *Phillips Case* above, and concludes: "Under this rule of equality we think a carrier cannot say to one shipper, 'I will enforce the burdensome terms of our contract requiring notice in a specified time,' and to another, 'I will release you from the same provisions in the same character of contract.' We do not say that a situation might not exist whereby a shipper would be relieved of the necessity of

giving notice of loss, but we do say that a carrier may not, by his voluntary act, release one and hold the other.'' The same conclusion was reached by the same court in *Kemper Mill Co.* v. *Missouri Pac. Ry. Co.,* 193 Mo. App. 466, 186 S. W. 8. There reference is made to the decision in the *Blish Milling Co. Case* above, and it is said that the supreme court of the United States there held that the giving of the notice by the shipper cannot be waived by the carrier. Again, in *Donoho* v. *Missouri Pac. Ry. Co.,* 193 Mo. App. 610, 187 S. W. 141, the same court held: ''Under the decisions of the supreme court of the United States, the contractual provision as to notice is valid, and it cannot be waived.''

When we realize that the ultimate object of the Commerce Act is to guarantee to interstate shippers absolute equality in rates and treatment, and to prevent unjust discriminations, by whatever means employed, the conclusion is forced that the carrier cannot waive a provision of the bill of lading of the character of the one under consideration. To permit the carrier to say to one of two competing shippers, ''If you do not present a notice of your claim for damages within the time limited by the bill of lading, your right to sue shall be forfeited,'' and to another shipper, under similar circumstances, ''Notwithstanding your failure to give the required notice, your right to press the claim by negotiations, or in court, will not be disputed, and no question will be raised upon your failure to give notice,'' would result in substituting for the written contract of shipment what is in effect a special agreement, not filed with nor sanctioned by the Interstate Commerce Commission, and one whereby the latter shipper would secure a decided preference and advantage over his less fortunate competitor. It was plainly the intention of Congress that the shipping contracts shall be such only as meet the approval of the Commission; that they shall be published for the benefit of all intending shippers alike; that they shall be rigidly adhered to by both shipper and carrier, and all the terms and provisions carried into effect in good faith. If the carrier

cannot waive the defense that the action against it was not commenced within the time limited by statute, as held in the *Phillips Case* above, neither can it waive the defense that the required notice was not presented in time.

It is suggested by counsel for the plaintiff that this cause **[2]** was tried and determined in the court below upon the theory that compliance with the provision of the shipping contract requiring notice could be waived, and that the railway company ought not to be permitted to change its theory at this late day. But whether such compliance can be waived is a federal question, and in our opinion our rule of practice to which reference is made must give way in this instance to the holding of the supreme court of the United States.

Since the required notice was not given in this instance, and the failure to give it could not be waived by the carrier, but must be invoked, there is, under the decision of the supreme court of the United States, no question open for further consideration.

Plaintiff urges that he may recover for the three animals **[3]** which died en route, even if he is denied relief for the injuries to the others. The action was brought to recover $1,504.83 as the aggregate damages for the loss of these three, for the injuries and depreciation to the others, and for the extra feed and care. The jury returned a general verdict in favor of plaintiff for $879.60, and we are unable to say from the record what particular elements were considered in making up that amount. Whether the jury found that these three animals died from exposure to the extreme cold, from being trampled by the others, or that the deaths resulted proximately from defendant's negligence in unreasonably delaying the shipment, cannot be determined. We cannot substitute this court for the jury and make findings upon those subjects.

The judgment heretofore rendered by this court is vacated and set aside, and it is now ordered that the judgment of the district court of Gallatin county in favor of the plaintiff, and

the order denying defendant's motion for a new trial, be reversed, and the cause is remanded, with directions to the lower court to enter judgment in favor of the defendant for its costs, including the costs incurred in the supreme court of the United States.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.