## Louisville & Nashville Railroad Company v. Ben Johnson and A. B. Wells.

(Decided December 10, 1918.)

## Appeal from Jefferson Circuit Court (Common Pleas No. 4).

1.   Carriers—Connecting Carrier—Interstate Shipment—Abandonment of Original Bill of Lading—Issuance of New Bill of Lading—Validity—Carmack Amendment.—There is nothing in the Carmack amendment that prevents the shipper and a connecting carrier from abandoning the original bill of lading and making a new contract whereby the connecting carrier becomes liable as an initial carrier, for an interstate shipment of livestock, to meet a change of conditions such as the sale of a portion of the stock before, and the purchase of new stock after, the line of the connecting carrier is reached, where it appears that no change in rates was secured thereby, and that the transaction was not a device to evade the statute.

2.   Carriers—Limiting Liability—Notice of Claim—Reasonableness of Provision.—A stipulation in a contract for an interstate livestock shipment, conditioning any liability for damages upon presentation of the claim in writing to the agent of the railroad company or other carrier, from whom the shipper receives the animals, before said animals are removed from the place of destination or from the place of delivery of same to the shipper, is reasonable and valid in the absence of a showing of facts that render it unreasonable as applied to the particular circumstances of the case.

3.   Carriers—Interstate Livestock Shipment—Notice of Claim—Waiver.—A stipulation in a contract for an interstate livestock shipment, conditioning any liability for damages upon presentation of the claim in writing to the agent of the railroad company or other carrier from whom the shipper receives the animals before they are removed from the place of destination or from the place of delivery, cannot be waived.

4.   Carriers—Limiting Liability—Notice of Claim—Compliance with Contract.—Under such stipulation, stock that has been driven to a pasture two miles from the town where it was delivered has been removed from the place of destination or the place of delivery, and a written notice of a claim for damages after such removal is not a compliance with the contract.

J. J. DONAHUE, BENJAMIN D. WARFIELD and C. H. MOORMAN for appellant.

DUFFIN, SAPINSKY & DUFFIN for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Ben Johnson and A. B. Wells brought two separate actions against the Louisville & Nashville Railroad Company to recover damages for injuries to an interstate shipment of horses and mules. One of the cars was shipped in the name of Ben Johnson, while two of the cars were shipped in the name of A. B. Wells. It developed on the trial that Wells and Johnson were equally interested in the three shipments and both were made parties plaintiff to each suit. The two suits were tried as one action and judgment rendered in their favor for the sums of $560.00 and $280.00, with interest. The railroad company appeals.

Originally the shipment consisted of about one hundred head of horses and mules, which were consigned from Battle Mount, Nevada, to Mt. Sterling, Kentucky, under through bills of lading issued by the Southern Pacific Company. They were routed via the L. & N. to Howell, Indiana, and thence via L. H. & St. L. and C. & O. to Mt. Sterling, Kentucky. At way stations between Battle Mount and East St. Louis, some of the animals were taken from the cars and disposed of. The cars reached East St. Louis on the morning of June 4th, 1914. There eleven additional horses were purchased by plaintiffs. While there plaintiffs entered into an agreement with defendant's contracting freight agent at East St. Louis by which the bills of lading issued by the Southern Pacific Company were surrendered and new bills of lading issued by the defendant. Thereupon the horses and mules were removed from the cars in which they arrived and transferred, together with the stock purchased at East St. Louis, to three L. & N. cars. Freight charges on the shipments from Battle Mount to Mt. Sterling followed through to Mt. Sterling and were paid at the latter point. Had the stock gone through on the original bills of lading, it would have left East St. Louis within eight hours after its arrival. As it was, it did not leave until the evening of the next day. According to the evidence for plaintiff, the stock was in good condition when it reached East St. Louis, and was in very poor condition when it reached Mt. Sterling. The evidence for the defendant tended to show that the horses and mules were unbroken and were wild and vicious. While en route from East St. Louis to Mt. Sterling the stock was not accompanied by the shippers or any one representing it. One of the cars reached

Mt. Sterling on the evening of June 7th, while the other two cars reached there the next morning. The stock was met by the shippers and taken to a pasture about two miles from the city. Written notice of the claim for damages was not given until June 13th.

The first ground urged for a reversal is that the trial court erred in holding the Louisville & Nashville railroad liable as initial carrier. The effect of the new contract on the liability of the Southern Pacific Company is not before us. It may be conceded that ordinarily the rights and liabilities of all the parties to an interstate shipment of freight are controlled solely by the original contract, and that the connecting carriers cannot change these rights and liabilities by merely delivering to the shipper new bills of lading controlling the shipment over their respective lines. Missouri K. & T. R. Co. v. Ward, 244 U. S. 382, 61 L. Ed. 1213. It may further be conceded that if the transaction in question was a mere device to evade the Carmack amendment, it should not be held effective. As we view the statute, it was not intended to prevent the parties from abandoning the original contract and making a new contract to meet a change of conditions. Though the original contract issued by the Southern Pacific Company required that company and its connecting carrier to deliver the stock at Mt. Sterling, several head of the stock were sold *en route*, and when the shipment reached East St. Louis, the cars were not full. The shippers concluded to halt the stock at that point and go into market there and buy other stock to fill up the cars. They would have paid the freight charges to that point if they had had the cash, but not having the cash, it was agreed that the freight charges should follow the stock and be paid at Mt. Sterling. Eleven additional head of stock were purchased at that point. Under ordinary circumstances, the stock would have left St. Louis within eight hours. As a matter of fact the stock was unloaded there and placed in L. & N. cars. Thereupon the shippers surrendered the original bills of lading and accepted new bills of lading from the Louisville & Nashville railroad, by which it became the initial carrier. It does not appear that the shippers obtained any advantages in rates by virtue of the new contract. There is nothing in the circumstances to show that the transaction was a mere subterfuge or device to evade the statute. On the contrary, it appears

that the parties acted in perfect good faith. It will thus be seen that the old contract was in fact abandoned, and a new contract was executed, and we find nothing in the statute that denies such power to the contracting parties. We therefore conclude that the Louisville & Nashville Railroad Company, by cancelling the old and issuing the new contracts, assumed the liability of an initial carrier, and that the trial court did not err in so holding.

The bills of lading issued by the Louisville & Nashville Railroad Company contained the following provision:

"As a condition precedent to the shipper's right to recover any damages for loss or injury to said animals, he will give notice in writing of his claim thereof to the agent of the railroad company or other carrier from whom he receives said animals before said animals are removed from the place of destination above mentioned, or from the place of delivery of the same to said shipper, and before said animals are mingled with other animals."

The trial court held this provision valid and submitted the question of waiver to the jury. We need not discuss the ruling of the trial court that the provision in question was reasonable further than to say that the same provision was held reasonable in the case of Northern Pacific Co. v. Wall, 241 U. S. 87, 60 L. Ed. 905, and in the case of Louisvillle & Nashville Railroad Company v. C. L. Croan, et al., 242 U. S. 610, which was reversed without an opinion on the authority of Northern Pacific Co. v. Wall, *supra*, and that there is no showing of facts that would render the provision unreasonable as applied to the particular circumstances of this case.

The next question to be determined is, may the notice provision be waived? Heretofore, we have been inclined to answer this question in the affirmative. Howard & Callahan v. I. C. R. R. Co., 161 Ky. 783, 171 S. W. 442; C. N. O. & T. P. R. Co. v. Smith & Johnston, 165 Ky. 235, 159 S. W. 987; B. & O. R. Co. v. Leach, 173 Ky. 452, 191 S. W. 310. Indeed, we construed the case of Georgia F. & A. Railway Co. v. Blish Milling Co., 241 U. S. 190, 60 L. Ed. 948, as not being decisive. B. & O. R. Co. v. Leach, *supra*. Other courts, however, have taken a different view of the scope and effect of that decision and have held it conclusive of the question. Wall v. Northern Pac. R. Co. (Mont.) 161 Pac. 518, L. R. A. 1917c; Banaka

v. Mo. Pac. R. Co., 193 Mo. App. 345, 186 S. W. 7; Kemper v. Mo. P. R. Co., 193 Mo. App. 466, 186 S. W. 8; Donoho v. Mo. P. R. Co., 193 Mo. App. 610, 184 S. W. 1149. The same interpretation was given to that opinion by the U. S. Supreme Court in the case of Mo. K. & T. R. Co. v. Ward, 244 U. S. 383, 61 L. Ed. 1213, wherein it said:

"The railway companies also contend that the acceptance of the second bill of lading operated as a waiver of all rights thereafter accruing under the first. The record discloses no evidence of intention to make such a waiver and there was no consideration for it. Furthermore, as stated in Georgia, F. & A. R. Co. v. Blish Milling Co., 241 U. S. 190, 197, 60 L. Ed. 948, 952, 36 Sup. Ct. Rep. 541, "the parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal act. . . . A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed."

No only so, but in the case of Erie R. Co. v. Stone, 244 U. S. 332, 61 L. Ed. 1173, where, as in this case, the reduced rates under which the horses were shipped and the limited liability arising from shipping under such reduced rates were fixed by the tariff schedules, and the form of limited liability contract duly published and filed with the Interstate Commerce Commission as required by law, it was held that the rates and contract which contained the notice requirement were binding on the parties until changed by order of the commission, thus negativing the idea that the notice of requirement could be waived.

But it is insisted by the shippers that there was a substantial compliance with the notice requirement, inasmuch as the stock was driven and placed in a pasture only two miles from the town of Mt. Sterling, and the written notice was then given before the stock was removed from that place or mingled with other stock. Without attempting to define the words, "place of destination," or "place of delivery" or to lay down any general rule on the subject, we conclude that stock that has been taken to a place two miles from the town where it was delivered is no longer at the place of destination, or place of delivery, but has been removed therefrom. Hence, a notice given after such removal is not a compliance with the statute.

Since the required notice was a condition precedent to the right of recovery and such notice was not given and could not be waived, it follows that the trial court should have directed a verdict in favor of the defendant.

Judgment reversed and cause remanded for a new trial consistent with this opinion. .

Whole court sitting.