## MEXICAN LIGHT & POWER CO., Limited, v. PENNSYLVANIA R. CO.

### No. 19824.

District Court, E. D. Pennsylvania.

April 13, 1940.

484

Conlen, LaBrum & Beechwood, by James B. Doak, all of Philadelphia, Pa., for plaintiff.

Windsor F. Cousins and Robert V. Massey, Jr., both of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a suit by a shipper against the initial carrier to recover damages for injury to electrical machinery caused by a derailment on the lines of a connecting carrier in Mexico. The suit was tried to the Court without a jury. Special findings of fact, in answer to requests, are filed herewith. The following is a summary:

The plaintiff delivered three specially built electrical transformers and parts to the defendant at Sharon, Pennsylvania, for transportation, and received the defendant's bill of lading. The bill specified Laredo, Texas, as the destination, and the property was consigned to the plaintiff, care of one Trevino, who was customs agent in the employ of the National Railways of Mexico. In the present transaction, he was also the agent of the plaintiff.

The machinery moved over the lines of the defendant and various connecting carriers in the United States to Laredo, where it was stopped. The necessary customs inspection and appraisal were made under the supervision of the plaintiff's agent, and the machinery was delivered in the original cars to the Texas Mexican Railways, which issued a new bill of lading for it to the plaintiff, covering the movement of the shipment from Laredo to El Oro, Mexico. At some point in Mexico on the lines of the National Railways, to whom the Texas Mexican Railways had delivered the cars at the national Boundary, the machinery was transferred to smaller cars of the National Railways. Thereafter, before reaching El Oro, the damage occurred.

Concededly, judgment must be for the defendant unless liability is imposed upon it by the terms of the Carmack Amendment as amended by the Cummins Amendments, 49 U.S.C. § 20(11), 49 U.S.C.A. § 20(11). The Carmack Amendment, 49 U.S.C.A. § 20(11) note, had imposed liability upon an initial carrier for damage to goods occurring on the lines of connecting carriers within this country. The Cummins Amendment extended this liability to initial carriers receiving property for transportation to a point in an adjacent foreign country "when transported on a through bill of lading."

The first question is whether the bill of lading issued by the defendant is a "through" bill. If it is, then the Amendment applies and the defendant is liable for the damage. The question is primarily one of fact. The scope and effect of a bill of lading, like any other contract, is governed by the intent of the parties. Evidence of intent is to be sought not only from the form in which the contract has been cast (although that is a matter of major concern), but also from the facts and circumstances surrounding its issue.

Ordinarily, a bill of lading is a "through" bill only from the point of origin to the destination named. Here the destination stated was Laredo, Texas. It was noted that the property was for export to El Oro, but the contract of the defendant

was to carry it upon its own road or through connecting carriers to Laredo and to no other or farther point. The contract as written would be fulfilled and the defendant discharged from further obligation to transport the goods when it delivered them to Trevino, the plaintiff's agent at Laredo. This does not constitute a through bill of lading to points in Mexico beyond Laredo.

The plaintiff produced evidence on the basis of which it asks the Court to find as a matter of fact that the bill was a through bill and intended to be such. This evidence consisted mainly of (1) the notation on the bill "for export to El Oro;" (2) the shipment was transported upon an export rate; (3) it moved into Mexico in the same cars in which it had originally been loaded; (4) the only reason for an interruption of the movement of the shipment at Laredo was for customs purposes.

This evidence is not, in my opinion, sufficient to overcome the presumption that the shipper as well as the carrier understood the bill of lading to be what it actually was on its face, namely a contract of carriage to Laredo, Texas, and not a through bill to some more distant point in Mexico.

The matter of the rate under which this shipment moved is of considerable importance. If the carrier had made a through rate from Sharon to El Oro it would furnish very strong evidence that the bill of lading, in spite of the declared destination, was a through bill. However, the evidence shows that the rate was a through rate from Sharon to the border only. It was not participated in by the National Railways of Mexico, and there was no provision in the tariff covering the movement of this shipment which required a through rate or the issuance of a through bill of lading for a shipment into Mexico. The rate was an export rate at $1.40 per 100 pounds, against the domestic rate for the same carriage of $1.55 per 100 pounds. This represents a concession granted by domestic carriers to export and import traffic in order to encourage the movement of such traffic, and in order to get the advantage of an export rate, it is usual for the bill of lading to indicate that the goods are for export. This was the purpose of the notation on the bill of lading in the present case, and I think it clear that that notation was not intended to import an obligation on the part of the initial carrier to transport the goods to the place noted.

Thus, although it appears that the carrier, when it received the property, understood that it was to go to an adjacent foreign country, it also appears that the carrier elected not to issue a through bill of lading to the ultimate point.

This brings us to the second question involved. The plaintiff contends that the clause of the Amendment, "when transported on a through bill of lading," was not intended to give the initial carrier the option to assume or not to assume the duties and obligations arising from a contract to transport to the point of final delivery. Such construction of the Act makes the clause, "when transported on a through bill of lading," entirely meaningless; and that result is not very satisfactorily avoided by adopting the reasoning of the Commission of Appeals of Texas in Gulf, C. & F. S. Ry. Co. v. Hines, 250 S.W. 1013, 1016. In that case the Commission seemed to assume that the clause in question applied both to domestic and foreign transportation, and, when dealing with a wholly domestic situation, concluded that it was used to designate "the kind of contract which the initial carrier was required to make." But, even so, the Commission was doubtful whether these words had any application at all to ordinary interstate shipments, and was very careful to say, "It is not intended that what we have here stated has reference to shipments from this country to adjacent foreign countries. We are inclined to think that the carrier in shipments of that kind might not be required to issue a through bill of lading."

The natural construction of the whole sentence of the Amendment indicates that this clause refers only to shipments to an adjacent foreign country, being placed immediately after that provision and not separated by punctuation. The clause came into the Act only when Congress undertook to deal with shipments into adjacent foreign countries. It is easy to understand that carriers might be willing to establish through rates and issue through bills of lading to points in Canada, and unwilling to make the same arrangements for points in Mexico. At any rate I think the intention was not to impose the general liability of the Carmack Amendment upon an initial carrier receiving goods for transportation into adjacent foreign countries, unless the carrier chose to assume it and evidenced its intention by the issuance of a through bill of lading.