JACK GOLDBERG, Plaintiff, *v.* DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, Defendant.

Municipal Court of New York, Borough of Manhattan, Fourth District, January 30, 1943.

*Bernard Tomson* for plaintiff.

*Rowland L. Davis, Jr.,* for defendant.

WATSON, J. Plaintiff moves for summary judgment pursuant to rule 113 of the Rules of Civil Practice.

The motion is made upon an agreed statement of facts, hence no affidavit has been submitted. Perhaps the motion might more appropriately have been made under section 476 of the Civil Practice Act for judgment on the admissions embodied in the agreed statement; but the parties seek a determination on the merits, and no question has been raised as to the practice adopted.

The action is brought to recover damages for a delay of two days in the transportation of three carloads of Christmas trees from Nova Scotia, Canada, to Newark, New Jersey. These shipments were received in Canada by the Canadian National Railways which issued therefor through bills of lading whereby the shipments were routed at a joint rate over the respective lines of the Canadian National Railways from Martins River, Nova Scotia, to Rouses Point, New York, of the Delaware and Hudson Railroad Corporation from Rouses Point to Binghamton, New York, and of the defendant Delaware, Lackawanna & Western Railroad from Binghamton, New York, to Newark, New Jersey. The three cars moved forward on the lines of the Canadian National Railways, but due to a derailment on said railroad in Quebec the cars were delayed in that Province. They subsequently moved over the lines of the Canadian National to Rouses Point where they were delivered by that railroad to the Delaware & Hudson; the Delaware & Hudson transported them thence to Binghamton where they were delivered by the Delaware & Hudson to defendant; they were transported by defendant over its lines from Binghamton to their destination at Newark, New Jersey, where they were placed for delivery December 14, 1939, two days late. The three cars were not delayed on the lines of either the Delaware & Hudson or defendant; in fact they received better than schedule movement from Rouses Point, New York, to the point of delivery at Newark, New Jersey. The only delay to said three cars from Martins River, Nova Scotia, to Newark, New Jersey, occurred on the Canadian National Railways in the Dominion of Canada, and said delay resulted in said three cars being placed for delivery at Newark, New Jersey, two days late. The loss due to the delay is by the stipulation agreed to be $315.25.

The bills of lading issued by the Canadian National Railways, constituting the contracts pursuant to which the three cars were transported, provided that "Notice of loss, damage or delay must be made in writing to the Carrier at the point of delivery, or to the Carrier at the point of origin, within four months after delivery of the goods — Unless notice is so given the Carrier shall not be liable." Concededly such notice was not given within four months, but was given within nine months after delivery. Because claim was not filed within four months of delivery, the claims were rejected. That is the defense interposed herein, and it must prevail unless the case is controlled by subdivision (11) of section 20 of the Interstate Commerce

Act. [U. S. Code, tit. 49, § 20, subd. (11)]. That section, as amended, provides, so far as here material: "Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State, Territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; and any such common carrier, railroad, or transportation company so receiving property for transportation from a point in one State, Territory, or the District of Columbia to a point in another State or Territory, or from a point in a State or Territory to a point in the District of Columbia, or from any point in the United States to a point in an adjacent foreign country * * * or any common carrier, raliroad, or transportation company delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void: * * * *Provided further,* That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months * * *."

Prior to the amendment of 1927 (44 U. S. Stat. 1448) the statutory liability was imposed only upon the initial carrier; and since that Act applies to international commerce only insofar as the transportation takes place within the United States (*Lewis-Simas-Jones Co.* v. *Southern Pacific Co.*, 283 U. S. 654, 660) and the Congress could not exert any extraterritorial authority over the foreign carrier or in respect of any bill of lading issued by it, as initial carrier, in the foreign jurisdiction, there was no room for dispute as to the interpretation of this provision; it could apply only to an initial domestic carrier, subject to the provisions of the Act. But when, by the amendment, liability was imposed likewise upon the delivering carrier, necessarily meaning also a domestic carrier subject to the provisions of the Act, the situation did not differ substantially from that considered in *Galveston, H. & S. A. R. Co.* v. *Woodbury* (254 U. S. 357). There, the court construed the provision of section 1 of the Act of. 1887 (Act to Regulate Commerce, 24 U. S. Stat. 379) which declared that the Act applied to " any common carrier * * * engaged in the transportation of passengers or property * * * from any place in the United States to an adjacent foreign country." The court said: " A carrier engaged in transportation by rail *to* an adjacent foreign country is, at least ordinarily, engaged in transportation also *from* that country to the United States. The test of the application of the act is not the direction of the movement, but the nature of the transportation as determined by the field of the carrier's operation." While, as I have said, the Congress of the United States may not exercise extraterritorial authority over the foreign carrier, it does have jurisdiction as against a domestic carrier which unites with a railroad of Canada in the publication of a joint through rate from a point in Canada to a point in the United States. (*News Syndicate Co.* v. *New York C. R. R. Co.* 275 U. S. 179; *Lewis-Simas-Jones Co.* v. *Southern Pacific Co., supra.*) The Act neither authorizes nor forbids the making of joint through international rates, and when a domestic carrier voluntarily receives property for transportation in international commerce it subjects itself, if the delivering carrier, to the statutory liability, whether a bill of lading has been issued or not, and it may protect itself by refusing to carry under a bill of lading which does not give it full right of recovery over against the carrier actually causing the loss. While, as the parties have stipulated, the bills of lading issued by the initial carrier constituted the contract which governed the entire transportation, they fixed the liability of participating carriers

only to the extent that the terms of the bills of lading were valid and binding. (*Georgia, Fla. & Ala. Ry. Co.* v. *Blish Milling Co.,* 241 U. S. 190.) The limitations of the Canadian bills of lading were inoperative after the shipment passed the Canadian line and came into the United States. (*Siebert* v. *Erie R. R. Co.,* 189 App. Div. 586, 589, 590.)

My attention has been directed to an unreported decision of the Appellate Term, First Department (*Cohen* v. *L. I. R. R. Co.,* Nov. 1940 Term), which held that an invoice value clause in a Canadian bill of lading covering a through shipment to Brooklyn, New York, was violative of the Carmack Amendment and therefore void. This in my opinion has not been overruled by the later decision of the Appellate Term in *Cohen* v. *Canadian National Railway Company,* likewise unreported (October Term 1941), for there, since the verdict was for defendant, the Appellate Term, in affirming the judgment, was not required to review the rulings of the trial court on the question of damages.

I, therefore, hold that the provision in the Canadian bills of lading limiting the time for filing claim to four months is, as to this defendant, violative of the provision of the Interstate Commerce Act that " it shall be unlawful for any such receiving or delivering carrier to provide by rule, contract, regulation or otherwise a shorter period for the filing of claims than nine months."

Accordingly, the motion is granted and judgment directed in favor of the plaintiff for the sum of $315.25 with interest thereon from December 12, 1939.