**MEXICAN LIGHT & POWER CO., Limited,**
**v. TEXAS–MEXICAN RY. CO.**

No. 11544.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 31, 1945.

Rehearing Denied Dec. 12, 1945.

Johns & McCampbell, of Corpus Christi, and Fulbright, Crooker, Freeman & Bates and Chas. W. Bell, all of Houston, for appellant.

J. D. Dodson and Charles W. Duke, both of San Antonio, Marcellus Eckhardt, of Corpus Christi, and Elmore H. Borchers, of Laredo, for appellee.

NORVELL, Justice.

This is an appeal from a judgment denying a shipper a recovery for damages suffered by it as a result of the derailment of certain freight cars upon which its property was being transported within the Republic of Mexico, over the lines of National Railways of Mexico. The asserted liability of appellee, The Texas-Mexican Railway Company, is predicated upon the provisions of 49 U.S.C.A. § 20(11),[1] in that appellant, Mexican Light & Power Company, Ltd., contends that appellee issued to it a through bill of lading covering the shipment from a point in the United States (Laredo, Texas) to a point in an adjacent foreign country (El Oro, Mexico).

The controlling question in this litigation is stated by appellee, substantially, as follows:

Did the instrument sued upon (which was issued by The Texas-Mexican Railway Company) disclose an enforcible through bill of lading upon which to hold appellee

---

[1] "Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State, Territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property, caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier, railroad or transportation company from the liability hereby imposed; and any such common carrier, railroad, or transportation company so receiving property for transportation from a point in one State, Territory, or the District of Columbia to a point in another State or Territory, or from a point in a State or Territory to a point in the District of Columbia, or from any point in the United States to a point in an adjacent foreign country, or for transportation wholly within a Territory, or any common carrier, railroad or transportation company delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States or within an adjacent foreign country when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void: * * *."

liable for damages arising from the negligence occurring within the Republic of Mexico while the property was being transported by the National Railways of Mexico?

This case was tried below upon the stipulations of the parties. From the facts so stipulated no conflicting fact inferences can be drawn. Questions of law only are presented.

On September 20, 1934, Westinghouse Electric and Manufacturing Company delivered three specially built electric transformers and parts to the Pennsylvania Railroad Company for shipment to Laredo, Texas. This equipment had been purchased by appellant and in the bill of lading issued by the Pennsylvania Railroad Company, said property was consigned to the Mexican Light & Power Company in care of Fausto Trevino, Customs Agent at Laredo, Texas. These transformers, etc., were loaded upon two Pennsylvania flat cars and transported over the lines of the Pennsylvania Railroad Company, Missouri-Kansas and Texas Ry. Co., Southern Pacific Lines, and The Texas-Mexican Railway Company to the freight yards of the latter railway company at Laredo, Texas.

While the cars loaded with appellant's property were waiting in the freight yards of the appellee at Laredo, said railway company issued to Fausto Trevino, appellant's agent, the document sued upon in this action. This instrument is dated September 29, 1934, and by it The Texas-Mexican Railway Company acknowledged receipt of the electrical equipment here involved, and agreed "to carry (the property received) to its usual place of delivery at said destination, if on its own road or its own water line, otherwise to deliver to another carrier on the route to said destination."

The shipment was consigned to Mexican Light & Power Company, Ltd., destination, El Oro, State of Mexico, route, via Acambaro.

The disputed instrument was made out upon a form prepared for a domestic straight bill of lading. The receipt clause states that the property to be shipped is "Received subject to the classifications and tariffs in effect on the date of the issue of this Bill of Lading." No rates or charges for carriage are set forth in the instrument which does, however, contain the following direction, set forth over the name of the consignor, Fausto Trevino, viz.: "The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges."

After the instrument above described had been issued and delivered, the appellee moved the cars laden with appellant's property from its yards in Laredo to the middle of the International Bridge over the Rio Grande. Here the cars were picked up by the Mexican carrier and transported to the interior of Mexico, where a derailment occurred with resultant damage to appellant's property. This damage occurred on October, 10, 1934.

Appellant made claim for damages against the Mexican carrier, which was rejected. Suits were then filed against the Pennsylvania Railroad Company and The Texas-Mexican Railway Company, upon the apparently alternative theories, (1) that the Pennsylvania was an initial carrier, under the Sharon bill of lading, and (2) that The Texas-Mexican Railway Company was the initial carrier under the Laredo bill of lading.

The action against the Pennsylvania was tried first and resulted in a judgment in favor of the carrier. Mexican Light & Power Co. v. Pennsylvania R. Co., D.C.E. D.Pa., 33 F.Supp. 483, 485.

The federal district court held that the Sharon bill of lading issued by the Pennsylvania was not a through bill of lading to El Oro, Mexico, although it contained the notation, "For export to: El Oro, Estado de Mexico, via Acambaro, via Laredo." The court further held that under the Carmack Amendment, as amended by the first Cummings Amendment, a carrier receiving property at a point within the United States for shipment to a point within an adjacent foreign country was not required by law to issue a "through bill of lading." (For a statement of the history of the Carmack Amendment and various amendments thereto, see Ann. 49 U.S.C.A. § 20(11), p. 89; also Alwine v. Pennsylvania R. Co., 141 Pa. 558, 15 A.2d 507.)

■ Under the above holding, it is apparent that The Texas-Mexican Ry. Co. was under no legal obligation to issue a through bill to El Oro, Mexico. It appears from the stipulations that the proportionate part of the export freight rates charged and paid by appellant under the Sharon bill of lading was in payment for transportation to the international boundary line. Appellee could have taken a receipt for the

property at this point and not issued a bill of lading calling for further shipment to a point within an adjacent foreign country over the lines of a foreign connecting carrier.

However, appellee did not choose to follow this seemingly permissible procedure. It issued an instrument which purports to be a through bill of lading and which clearly imports an obligation on the part of appellant to pay charges for transporting its property to El Oro, Mexico. It further appears that freight charges (for transportation in Mexico) were actually paid, although appellee received no part of them. In fact, appellee having been paid for transportation to the international boundary line, could not lawfully receive an additional sum of money for transporting the property from its yards in Laredo to said boundary line, in view of the rules and regulations of the Interstate Commerce Commission relating to the establishment of uniform rates.

 This, however, does not mean that the Laredo bill of lading was issued without a legal consideration. The shipment was moved by appellee from its Laredo yards to the international boundary line and for this service appellee was paid by appellant. This is true whether it be considered that service was rendered under one or more of the bills of lading involved in transporting the property from Sharon, Pennsylvania, to El Oro, Mexico. Further, a through bill of lading, in the light of the Carmack and Cummings Amendments, represents one contract and must be regarded as a unit and not as a series of contracts between a shipper and a number of carriers in considering tort liability for damages sustained in the course of transportation. A connecting carrier is regarded as the agent of the initial carrier, regardless of the actual contractual relationship existing between the two. Here the bill of lading issued by appellee was accepted by appellant, or its agent, as and for a contract for shipment through to El Oro, Mexico. No contract of carriage was entered into between the appellant and the Mexican carrier, and none was necessary by reason of the method adopted by appellant and appellee in effecting arrangements for further transportation of appellant's property to its ultimate destination in Mexico.

 We hold that The Texas-Mexican Railway Company was the initial carrier

under a through bill of lading which was supported by a valuable consideration. Barrett v. Northern Pac. R. Co., 29 Idaho 139, 157 P. 1016; Rice v. Oregon Short Line R. Co., 33 Idaho 565, 198 P. 161; Louisville & Nashville R. Co. v. Johnson, 182 Ky. 418, 206 S.W. 638.

 Appellee also contends that the Laredo bill of lading was absolutely void, in that it violated the provisions of 49 U.S. C.A. § 6(1), (4), (5) and (7), which relate to the fixing and publication of rates, fares and charges for transportation and the fixing of uniform charges and rates. It was stipulated in the court below, "that when the shipment upon which this suit is founded was made, no through railroad tariff was in effect governing such shipment from either Sharon, Pennsylvania, or from Laredo, Texas, to either El Oro, Mexico, or any other point in Mexico."

The Interstate Commerce Commission has no authority to establish rates or supervize methods of fixing and publicizing rates without the limits of the territorial jurisdiction of the United States. 49 U.S.C.A. § 1(2). It has been held that the Interstate Commerce Act neither authorizes nor forbids the making of joint, through international rates. Goldberg v. Delaware, L. & W. R. Co., 180 Misc. 176, 40 N.Y.S.2d 44, and we do not understand that the establishment of a through rate to a point in an adjacent foreign country is a necessary prerequisite to the issuance of a legal and binding through bill of lading to such point. To so hold would go far toward defeating the obvious purpose of Congress in extending in part the provisions of the Carmack Amendment to shipments from a point in the United States to a point in an adjacent foreign country, as was done by the Cummings Amendment. The record before us does not disclose that an illegal or unauthorized rate was in any way involved.

 However that may be, it has been held as well settled law that the fact that the contract of carriage was based upon an illegal or discriminatory rate does not render the contract absolutely void, so that liability for tort could not be predicated upon it under the provisions of the Interstate Commerce Act. Adams Express Co. v. Darden, 6 Cir., 286 F. 61. In Judge v. Northern Pac. Ry. Co., C.C.Or., 189 F. 1014, 1015, it was said that: "The Interstate Commerce Commission forbids rebates, special rates, preferences, etc., and makes

all agreements in reference thereto void, but it does not make the contract of af-freightment otherwise void, and there is nothing in the law which will excuse the carrier from liability when it has accepted property for transportation under such a contract."

Cases which involve the validity of rates and charges incident to transportation are clearly distinguishable from those in which damages for negligent carriage are involved.

 We hold that the provisions of the Interstate Commerce Act do not, under the facts of this case, prohibit the fixing of liability upon appellee as the initial carrier under the through bill of lading issued by it.

We do not regard the issuance of a through bill of lading to a point in an adjacent foreign country as being without the corporate powers of the appellee, which is a Texas railway corporation. Initial carrier liability for the negligence of a connecting carrier is not something which appellee in so many words assumed by contract provision, but is a liability which was imposed by Congress in the exercise of its power to regulate interstate and foreign commerce.

It was stipulated below that appellee "has no agreement and had none at the time the shipment moved, whereby it may recoup or will be reimbursed for any damage it may pay for negligence on the Mexican lines." The agreement between appellee and National Railways of Mexico was a general understanding that upon delivery by appellee at the International Boundary Line, the National Railways of Mexico would receive said property and equipment.

It was likewise stipulated that 24,950 shares out of 25,000 shares of the capital stock of The Texas-Mexican Railway were held by the trustee for the holders of the bonds issued by the National Railways of Mexico as security for the payment of said bonds.

As we view the case, the liability of the initial carrier under the Interstate Commerce Act is in no way dependent upon agreements between the initial carrier and the connecting carrier. Nor does it depend upon the inter-corporate relationship of two carriers. These matters are immaterial.

We are of the opinion that, under the terms of the first Cummings Amendment to the Carmack Amendment, The Texas-Mexican Railway Company is liable to appellant for the amount of damages sustained by it as fixed by stipulation of the parties. It, therefore, becomes our duty to render such judgment as should have been rendered by the trial court. Rule 434, Texas R.C.P.

The judgment appealed from is reversed and judgment here rendered that appellant do have and recover from appellee the sum of $13,750, together with interest on said amount from October 10, 1934, until paid, at the rate of six per cent per annum and all costs of suit.

Reversed and rendered.