THE TEXAS MEXICAN RAILWAY COMPANY V. MEXICAN LIGHT AND POWER COMPANY.

No. A-813. Decided April 17, 1946.
Rehearing overruled May 15, 1946.
(193 S. W., 2d Series, 964.)

*J. D. Dodson* and *Charles W. Duke,* both of San Antonio, *Marcellus Eckhart,* of Corpus Christi, and *Elmore H. Borchers,* of Laredo, for petitioner.

The Court of Civil Appeals erred in failing to uphold the judgment and the facts found by the trial court in favor of petitioner's defense and in not affirming said judgment, since neither party intended or understood the bill of lading from the point of origin to be a through bill of lading from Laredo to El Oro, Mexico, but that it was a memorandum or receipt and evidence of the obligation of petitioner to safely deliver the shipment to the international boundary and for use of respondent's agent in making arrangements for importation into Mexico. Matthews v. Looney, 100 S. W. (2d) 1061; Illinois Match Co. v. Chicago, R. I. & P. Ry. Co. 250 Ill. 396, 95 N. E. 492; Lilly v. Grand Trunk W. Ry. Co., 317 U. S. 481, 63 Sup. Ct. Rep., 347.

*Johns & McCampbell,* of Corpus Christi, *Fulbright, Crooker, Freeman & Bates* and *Chas. W. Bell,* all of Houston, for respondent.

The entire obligation of the haul of this machinery was based upon the bill of lading from Sharon, Pa., the point of origin, to the point of destination, El Oro, Mexico. There were only two bills of lading issued, one from Sharon, Pa. to Laredo "for export" and one by the petitioner from Laredo to El Oro. The Mexican railroad issued no bill of lading. The obligation of a bill of lading is from the point of origin to the point of destination named therein. Gulf C. & S. F. Ry. Co. v. Hines, 250 S. W. 1013; Mexican Light & Power Co. v. Pennsylvania R. R. Co. 33 Fed. Supl. 483, 485; American Trust Co. v. American Ry. Express Co., 42 Fed. (2d) 272.

MR. JUSTICE HICKMAN delivered the opinion of the Court.

This is a suit by Mexican Light & Power Company, Ltd., a Canadian corporation, respondent, against The Texas Mexican Railway Company, a Texas corporation, petitioner, for damages on account of injuries to electrical machinery resulting from a derailment in the Republic of Mexico on the lines of the National Railways of Mexico. Liability is sought to be imposed upon petitioner under the provisions of the Cummings Amendments to the Carmack Amendment. 49 U. S. C. A., Sec. 20 (11). The judgment of the trial court denied respondent any recovery, but that judgment was reversed by the Court of Civil Appeals and judgment rendered in its favor for the stipulated amount of its damages. 190 S. W. (2d) 838.

The statute relied upon by respondent to fix the liability of petitioner is copied as a footnote to the opinion of the Court of Civil Appeals. Under the provisions of that statute, if petitioner received the machinery for transportation from a point in the United States (Laredo, Texas) to a point in an adjacent foreign country (El Oro, Mexico) and for a valuable consideration issued to respondent a through bill of lading covering the shipment from its yards in Laredo to El Oro, then it is liable to respondent for. the damages sustained on account of the negligence of the National Railways of Mexico, a connecting carrier; otherwise it is not liable therefor.

The facts were stipulated and those deemed controlling will be summarized in this opinion. The machinery was purchased by respondent from Westinghouse Electric & Manufacturing Company which company delivered it to the Pennsylvania Railroad Company at Sharon, Pa., for transportation to El Oro, Mexico. That company issued to the consignor a uniform straight bill of lading consigning the machinery to respondent, in care of

Fausto Trevino, Custom Agent at Laredo, Texas. The bill of lading disclosed that the freight charges had been prepaid and carried on its face this notation, "FOR EXPORT TO: EL ORO, ESTADO DE MEXICO, VIA ACAMBARO, VIA LAREDO." The shipment went forward from Sharon, Pa., over the Pennsylvania Railroad line and connecting carriers to Alice, Texas, where same was delivered to petitioner and by it transported to its yards in Laredo. On the day after the shipment arrived at Laredo, petitioner issued the instrument claimed by respondent to be a through bill of lading from Laredo, Texas, to El Oro, Mexico. Upon this instrument respondent bases its alleged cause of action against petitioner. It was prepared upon a form employed by petitioner and on its face appears to be a regular bill of lading. It recites that the shipment was received from Fausto Trevino; that same was consigned to respondent, destination El Oro, "State of Mexico," via Acambaro. No rates or charges for transportation are named in the instrument, but on its face there is printed over the type-written signature of the consignor, Fausto Trevino, the following: "The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges." After issuing this instrument, petitioner delivered same to Trevino who then completed his arrangements with the Mexican Customs Office for transportation into Mexico. He then notified petitioner of that fact and thereupon petitioner moved the cars, laden with the machinery, from its yards to the middle of the International bridge between Laredo, Texas, and Nuevo Laredo, Mexico. Here they were picked up by National Railway of Mexico and transported to a point in the interior of Mexico where the derailment occurred resulting in the damages sued for herein.

Additional facts taken from the stipulations are: that when this shipment was made no through railroad tariff was in effect governing such shipment from either Sharon, Pa., or Laredo, Texas, to El Oro, Mexico, or any other point in Mexico; that Fausto Trevino, who acted as agent for respondent in the matter, did not pay petitioner for carrier charges or any other charges than those applicable from Sharon, Pa., to Laredo, Texas, which included bringing the shipment to the international border line where it was delivered to the National Railways of Mexico; that the shipment moved into Mexico on the same cars on which same was loaded at Sharon, Pa.; that petitioner received no portion of the revenue paid the National Railways of Mexico for transporting the shipment in question from the international border line into the Republic of Mexico and had no agreement to receive any portion of such revenue or agreement whereby it may recoup or be reimbursed for any damages it may

pay on account of the negligence of the Mexican lines; that, of the freight charges paid at Sharon, Pa., petitioner received 15.02 per cent, which amounted to $248.70; that that amount was its compensation for transporting the shipment from Alice, Texas, to Laredo, Texas, and for delivering same to the international boundary line; that such freight charges were based upon the export rate from Sharon, Pa., to Laredo, Texas, which rate was slightly lower than the domestic rate and was applicable because the Sharon bill of lading had endorsed on it "for export."

Respondent made claim for damages against the National Railways of Mexico, which was rejected. Suits were then filed against the Pennslvania Railroad Company and petitioner, upon the alternative theories, (1) that the former was an initial carrier, under the Sharon bill of lading, and (2) that petitioner was the initial carrier under the Laredo bill of lading.

The Pennsylvania suit was tried first and resulted in a judgment in favor of the carrier. Mexican Light & Power Co., v. Pennsylvania R. Co., 33 Fed. Supp. 483, 485. It was held in that case that the Sharon bill of lading was not a through bill of lading to El Oro, Mexico.

■ It is our view that no consideration whatever moved to petitioner or from respondent for the issuance of the Laredo bill of lading. Petitioner did not receive this shipment for transportation at its yards in Laredo, but received same for transportation as an agent of the initial carrier, the Pennsylvania Railroad, at Alice, Texas, under a bill of lading issued by the initial carrier imposing upon petitioner the duty to transport same to the international boundary line. The consideration for the service thus imposed upon petitioner and later performed by it had theretofore been paid to its principal, the Pennsylvania Railroad. No other consideration was paid or promised petitioner and no other service was performed for that consideration. The shipment did not come to rest in the yards of petitioner at Laredo and then move forward therefrom to a new destination under a new bill of lading. The Sharon bill of lading was not discharged until the shipment reached the center of the bridge; otherwise the higher domestic rate should have been applicable. The entire transportation from Sharon, Pa., to the international boundary line was governed by the Sharon bill of lading and not at all by the Laredo bill of lading. Missouri, Kansas & Texas Ry. Co. v. Ward, 244 U. S. 383. From the opinion in that case this quotation is taken:

"* * * The bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation. The terms of the original bill of lading were not altered by the second issued by the connecting carrier. As appellants were already bound to transport the cattle at the rate and upon the terms named in the original bill of lading, the acceptance by the shipper of the second bill was without consideration and was void."

This statement is taken from the opinion in Panhandle & S. F. Ry. Co. v. McCrummen, 240 S. W. 607, 609:

"* * * An initial carrier is authorized to issue a through bill of lading, binding upon it and the connecting carrier as well. This is the only bill or receipt authorized for the entire shipment, and one issued by a connecting carrier is of no binding force or effect unless upon a new or independent consideration moving to the shipper. Evidently by this addition to the amendment it was intended to adopt the same rule applied in interstate shipments under the Interstate Commerce Act (U. S. Comp. St. Sec. 8563 et seq.) Railway Co. v. Ward, 244 U. S. 383, 37 Sup. Ct. 617, 61 L. Ed. 1213; Railway Co. v. Word (Tex. Civ. App.) 159 S. W. 375 (3-5)."

■ We do not agree with the proposition that the consideration paid petitioner under the Sharon bill of lading for transportation from Alice to the international boundary line constituted also a consideration for the issuance by it of a new bill of lading under which it assumed liability for the negligence of National Railways of Mexico.

■ The movement of the freight under the Laredo bill of lading began, if at all, in the center of the International bridge at the beginning point of the National Railways of Mexico and continued wholly on such lines. Does a carrier incur liability for damages resulting from the negligence of a connecting carrier by the issuance of its bill of lading, without consideration, covering a shipment which never moves over its own lines but which begins on and moves wholly over the lines of such connecting carrier? We find nothing in the statute under review warranting an affirmative answer to that question. For a carrier to incur liability as the initial carrier under the Carmack or Cummings Amendments, it must be an initial carrier in fact. In Ga. So. & F. Ry. Co., v. Tifton Produce Co., 49 Ga. App. 530, 176 S. E. 89, the railway company sought to be charged was actually affiliated with the Southern Railway Company as a part of a system and in pursuance of an arrangement under which it might·

benefit indirectly such company issued its through bill of lading covering a car of melons routed over the Southern Railway Company and connecting carriers to a point in New York. The shipment did not move under the bill of lading issued by the carrier sought to be charged over any portion of its lines, but wholly over the lines of other carriers. In that case liability was asserted under the Carmack Amendment against the company which issued the bill of lading for damages resulting from the negligence of another carrier over whose lines the shipment moved. After reciting that the defendant received no part of the freight charges the opinion stated:

"* * * nor can it be held liable as initial carrier for the negligent acts of other carriers, since it never received the 'property for transportation,' within the language and meaning of the interstate commerce acts. The agents of a railroad company that is not in fact an initial carrier cannot by mere written fiat assume for it such a status."

In this case it cannot be said that petitioner received the "property for transportation" at Laredo within the meaning of the statute, that any consideration moved to it for the execution by it of a through bill of lading from Laredo to El Oro, or that it transported or undertook to transport the property under such a bill of lading over any portion of its own line. It is therefore concluded that liability cannot be imposed upon petitioner for the negligence of the National Railways of Mexico under the Cummings Amendments of the Carmack Amendment. The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court affirmed.

Opinion delivered April 17, 1946.

Rehearing overruled May 15, 1946.

Note: Certioari granted by Supreme Court of the United States, 329, U. S. 697, 91 L. Ed. *35, 67 Sup. Ct. 97.