## MEXICAN LIGHT & POWER CO., LTD. *v.* TEXAS MEXICAN RAILWAY CO.

No. 404.   Argued February 6, 1947.—Decided June 16, 1947.

*Charles W. Bell* argued the cause for petitioner. With him on the brief was *Carl G. Stearns.*

*John P. Bullington* argued the cause and filed a brief for respondent.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is an action to recover damages for injury to goods in the course of an export shipment by rail. The Westinghouse Electric and Manufacturing Company delivered to the Pennsylvania Railroad Company in Sharon, Pennsylvania, goods ultimately destined for the Mexican Light and Power Company. According to the bill of lading issued by the Pennsylvania Railroad the goods were consigned to

The Mexican Light & Power Co. Ltd.,
c/o Fausto Trevino, Customs Agent,
(National Railways of Mexico).

The destination was Laredo, Texas, with the further notation

"For Export to: El Oro, Estado de Mexico via Acambaro via Laredo."

The transportation charges were prepaid at the export rate, less than the domestic, and they covered shipment not merely into Laredo but up to the international boundary.

The Texas-Mexican Railway was the last of the series of connecting carriers over which the machinery was routed by the Pennsylvania. The former, having received the shipment at Alice, Texas, continued the carriage to its yards at Laredo. At Laredo, there was issued to Fausto Trevino, the agent, what formally appears to be a bill of lading consigning the shipment to petitioner at El Oro.

The record is silent as to the circumstances that brought this document into existence, but it is admitted that the respondent received no payment for transporting the goods other than its share in the export rate prepaid to the Pennsylvania under the Sharon bill of lading. Trevino did use the second bill of lading for clearing the shipment with the Mexican customs, but there is no showing that the first bill of lading would not have served as documentation for this purpose. The respondent railroad then moved the goods, still in the original cars, from its yards to the international boundary. There, the shipment passed to the National Railways of Mexico and it was on its lines, in Mexico, that the machinery was injured.

Petitioner brought this suit in one of the district courts of Texas. Judgment went for the railroad. The Texas Court of Civil Appeals reversed, 190 S. W. 2d 838, but was in turn reversed by the Supreme Court of Texas. 145 Tex. 50, 193 S. W. 2d 964. We granted certiorari, 329 U. S. 697, because important issues affecting the carrier's liability under the Interstate Commerce Act were pressed upon us.

On full consideration of the case it falls within a very narrow compass. The goods consigned to Laredo moved on the bill of lading issued at Sharon with the indicated connections, including the Texas-Mexican. By virtue of the Carmack Amendment, 34 Stat. 584, amended, 38 Stat. 1196, that bill of lading determines the rights of the consignee. While each connecting carrier is, of course, liable for damage occurring on its line, only the initial carrier is liable for damage on any of the connections. Unless, therefore, the Texas-Mexican Railway was an initial carrier with reference to the Mexican Railroad it cannot be responsible for injuries on that road. And it did not become an initial carrier merely by force of what purported

to be a bill of lading issued at Laredo unless the so-called second bill of lading represents the initiation of a new shipment on the Texas-Mexican.

We agree with the Texas Supreme Court that nothing happened at Laredo to displace the duty which was created at Sharon for the carriage of the goods by the Texas-Mexican to the international boundary, or to modify the terms of its undertaking when, at Alice, it received the goods under the Sharon bill of lading.

What was said of the shipment of cattle in *Missouri, Kansas & Texas R. Co.* v. *Ward,* 244 U. S. 383, 387, is precisely applicable to the shipment of machinery in this case:

> "The terms of the original bill of lading were not altered by the second issued by the connecting carrier. As appellants were already bound to transport the cattle at the rate and upon the terms named in the original bill of lading, the acceptance by the shipper of the second bill was without consideration and was void."

No matter what the convenience which a consignee may derive from a bill of lading issued by a connecting carrier on a through shipment, unless the connecting carrier has received a consideration for the bill of lading in addition to that which flowed under the bill of lading issued by the initiating carrier, the Carmack Amendment makes such second bill of lading void. It can neither enlarge the liability of the connecting carrier nor contract that of the initiating carrier. That is what was meant when the *Ward* case said that the purpose of the Carmack Amendment was "to create in the initial carrier unity of responsibility for the transportation to destination." *Missouri, Kansas & Texas R. Co.* v. *Ward, supra,* at 386. This is an even stronger case for the application of this principle.

For in the *Ward* case the Court found the second bill of lading void for lack of consideration although it was "alleged to have been issued in consideration of a special reduced rate theretofore duly filed with the Interstate Commerce Commission" because there was nothing to indicate that that special rate "affected the through rate already agreed upon in the original bill of lading." 244 U. S. at 385–86.

Properly finding that the so-called bill of lading did not evidence any new and independent undertaking, when judged by the rigid requirements by which bills of lading are valid under the Carmack Amendment, the Texas Supreme Court was right in holding that the shipment over the Texas-Mexican legally moved only under the original bill of lading, that the Pennsylvania was never displaced as the initial carrier, and that therefore the Texas-Mexican was not liable for damage that occurred on the Mexican Railroad.

*Judgment affirmed.*

MR. JUSTICE REED, with whom MR. CHIEF JUSTICE VINSON joins, dissenting.

We are of the opinion that the respondent, The Texas Mexican Railway Company, is the initial carrier under the bill of lading issued by it at Laredo for carriage of the articles to El Oro, Mexico. The bill of lading issued by the Pennsylvania Railroad was for carriage from Sharon, Pennsylvania, to Laredo, Texas. Accepting the interpretation of the Court, that this Pennsylvania bill required the delivery of the shipment by the respondent at the International Boundary in Laredo, there remains the necessity of causing the shipment to cross the boundary line and proceed upon its journey into Mexico. As the Court concedes, the bill of lading, sued upon here, was

used to clear "the shipment with the Mexican customs." It is also plain that it was this latter bill that caused the shipment to cross the line. Without it, the respondent could not have made delivery to the Mexican railway system. The Pennsylvania bill of lading called for delivery to the consignee's agent in Laredo, Fausto Trevino. The consideration to respondent for its issue would be a similar service for northbound shipments from the Mexican Railways or promotion of respondent's export business.

The *Ward* case, 244 U. S. 383, is not an authority for the Court's holding. There the suit was brought on a through bill from a Texas point to an Oklahoma point. The defense was that a new contract had been made with a connecting carrier. It was said, p. 387:

> "The bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation. The terms of the original bill of lading were not altered by the second issued by the connecting carrier. As appellants were already bound to transport the cattle at the rate and upon the terms named in the original bill of lading, the acceptance by the shipper of the second bill was without consideration and was void."

The facts of this case seem to us entirely different and to require that the respondent railway accept responsibility as the initial carrier.