RISS & COMPANY, Inc., Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 13379-4.

United States District Court
W. D. Missouri, W. D.

Sept. 24, 1962.

Douglas Stripp and Colvin A. Peterson, Jr., of Watson, Ess, Marshall & Enggas, Richard L. White and Carl E. Laurent, White & Laurent, Kansas City, Mo., for plaintiff.

F. Russell Millin, U. S. Atty., and William A. Kitchen, Asst. U. S. Atty., Kansas City, Mo., for defendant.

BECKER, District Judge.

This is an action by Riss and Company, a licensed interstate common carrier, against the United States to recover transportation charges allegedly incurred by the United States in the principal sum of $88,991.54. The defendant United States in its answer admits its liability for transportation charges in the principal sum of $88,076.48, denying the correctness of certain of the charges.

United States counter-claims against the plaintiff Riss and Company for $231,172.12. As a basis for the counter-claim, the defendant United States states that the plaintiff Riss and Company accepted from the United States Air Force for transportation from Middletown Air Force Base, Pennsylvania, to Tinker Air Force Base, Oklahoma, a shipment of government property described as "electrical instruments, No. 1" and "machinery parts, No. 1, steel", for which bill of lading AF–9186714 was issued; that in the performance of its contract plaintiff Riss and Company caused the property to be placed in a trailer and transported over the lines of the Missouri Kansas Texas Railroad, a corporation (hereinafter referred to as M-K-T Railroad), during the course of which a wreck and fire occurred on or about February 9, 1961, totally destroying the entire shipment of property; that the value of the shipment destroyed is $231,171.12.

Riss and Company also filed a third party complaint against the M-K-T Railroad, impleading the railroad and praying for judgment against the railroad for such sum as may be recovered by the United States on its counterclaim.

In its reply to the counterclaim of United States, plaintiff Riss and Company denied the averments of the counterclaim except the averment that on February 6, 1959, it accepted from Binghamton Warehouse and Terminal, Inc., pursuant to the bill of lading AF–9186714, a shipment of Government property as described in the bill of lading. Plaintiff Riss & Co. admits that it caused the property to be placed in a trailer and transported over the lines of the M-K-T Railroad. Further, in the reply, plaintiff Riss and Company denied that it was the initial or delivering carrier and made other defenses which are not material to the decision in this cause.

The M-K-T Railroad, third party defendant, answered the third party complaint by admitting that on or about February 6, 1959, a loaded and sealed truck-trailer was delivered by the plaintiff to Pennsylvania Railroad Company at Harrisburg, Pennsylvania, for carriage and delivery to Oklahoma City, Oklahoma, over the lines of Pennsylvania Railroad Company and M-K-T Railroad, pursuant to a contract between plaintiff Riss and Company and both railroads; that the contract provided, among other things, that the motor carrier Riss should be indemnified against all loss, damage, liability, and expense arising out of destruction or damage to property, including trailers and contents thereof while carried by the railroads under the agreement, in a sum not to exceed $100,000 for the contents of any one trailer. The M-K-T Railroad further pleaded that it had paid to Riss and Company under said agreement the sum of $100,000 in full satisfaction of the loss and damage to the contents of the trailer in question.

Prior to trial, without objection by any party and after hearing, the motion of M-K-T Railroad for summary judgment on the third party complaint was sustained, and a summary judgment entered in favor of the railroad company on the third party complaint with prejudice to plaintiff Riss and Company, but without prejudice to the defendant United States. Thereafter, the cause was tried by the Court without a jury on issues presented by the following questions presented:

## QUESTIONS PRESENTED

1. Whether the plaintiff Riss and Company is liable (under the Carmack Amendment, Title 49 U.S.C.A. § 20(11), or under any other rule or provision of law), to the defendant United States in cause No. 13,379–4 for the loss and damage to the property being shipped from Middletown Air Force Base, Pennsylvania, to Tinker Air Force Base, Oklahoma, which said loss and damage occurred on or about February 9, 1959.

2. Whether the right, if any, of the Government to recover from Riss and Company for the loss or damage described in the preceding paragraph (1) has been barred by limitation or lost to

the Government for any other cause. (Not decided herein because of disposition on other grounds.)

The material portions of the Carmack Amendment reads as follows:

"Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States * * * when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier, railroad, or transportation company from the liability imposed; and any such common carrier, railroad, or transportation company so receiving property * * * or any common carrier, railroad, or transportation company delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States * * * when transported on a through bill of lading, notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void * * * *Provided further,* That all actions brought under and by virtue of this paragraph against the delivering carrier shall be brought, and may be maintained, if in a district court of the United States, only in a district, and if in a State court, only in a State through or into which the defendant carrier operates a line of railroad: *Provided further,* That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice: *And provided further,* That for the purposes of this paragraph and of paragraph (12) of this section the delivering carrier shall be construed to be the carrier performing the line-haul service nearest to the point of destination and not a carrier performing merely a switching service at the point of destination: *And provided further,* That the liability imposed by this paragraph shall also apply in the case of property reconsigned or diverted in accordance with the applicable tariffs filed as in this chapter provided."

■ Motor carriers are subject to the Carmack Amendment. Sun Insurance Office Limited of London v. Be-Mac Transport Co. (C.A. 8), 132 F.2d 535; Thomas v. National Delivery Association (W.D.Pa.) 24 F.Supp. 171.

## THE FACTS

Stipulation of facts and evidence disclosed the following:

Riss and Company during the time in question was a licensed common carrier engaged in the carriage of goods for the Government and other shippers as a motor carrier. Under contracts with certain railroads, including the Pennsylvania Railroad and M-K-T Railroad, Riss and Company was licensed to, and did, provide a "piggy-back" shipping service in which its motor trailers were carried at times by the railroads. In this "piggy-back" service a trailer could be loaded at the place of business of the shipper and conveyed by motor tractor to a railroad, placed upon a railroad car, and hauled to the point on the railroad nearest its destination. Thereafter, the trailer could be taken from the railroad car and hauled to the final destination by motor tractor, thereby providing a joint motor carrier-railroad service from the point of origin off the railroad to a final destination off the railroad. Such a "piggy-back" carriage was involved in this case.

On February 6, 1959, the United States shipped from Middletown, Pennsylvania, a full trailer load of electrical instruments and machinery parts (including gyroscopes, an item of unusual value) destined to Tinker Air Force Base, Oklahoma. On February 9, 1959, the trailer containing this shipment and its contents were totally destroyed while being carried by the M-K-T Railroad as a result of a train wreck and fire occurring in the State of Missouri.

At the time of the shipment Binghamton Warehouse and Terminal, Inc., was a licensed interstate motor carrier authorized to serve Middletown, Pennsylvania, and other points including Binghamton, New York, Harrisburg, Pennsylvania, and Washington, D. C. At that time, Riss and Company, although a licensed interstate motor carrier, did not have a permit to serve Middletown, Pennsylvania. Binghamton Warehouse and Terminal, Inc., was ordinarily engaged in carriage for relatively short distances and was known as a "short haul" carrier. Riss and Company was engaged in carriage for much longer distances and was known as a "long haul" carrier. The carriage from Middletown Air Force Base in Pennsylvania to Tinker Air Force Base in Oklahoma was considered a long haul.

The shipment in question was undertaken under the following circumstances: The officials at the Middletown Air Force Base notified Binghamton Warehouse and Terminal, Inc., of the proposed shipment to Tinker Air Force Base in Oklahoma. Being a short haul carrier, Binghamton Warehouse and Terminal, Inc., preferred that its trailer should not be in service out of its area of operations for the period of time it would take to go to Oklahoma and wait for a return shipment. Consequently, in accordance with common practice among carriers, Binghamton Warehouse and Terminal, Inc., requested Riss and Company to supply the trailer. Having secured a trailer from Riss and Company, Binghamton Warehouse and Terminal, Inc., caused the trailer, fully loaded with the goods to be carried to Middletown Air Force Base, Middletown, Pennsylvania, and thereafter delivered either directly to the Pennsylvania Railroad yard, or to Riss and Company's terminal for carriage to the Pennsylvania Railroad yard for loading onto a railroad car. It was intended that the shipment be carried "piggy-back" by the Pennsylvania Railroad and thereafter delivered to the M-K-T Railroad for further "piggy-back" carriage.

Binghamton Warehouse and Terminal, Inc., in accepting the shipment from the Air Force Base at Middletown, Pennsylvania, was acting in its own right as a licensed common carrier and not as an agent of Riss and Company, which had no authority to serve Middletown, Pennsylvania. The legal conclusion of the defendant's witness Norris and the alleged admissions of the plaintiff's witness Green, are insufficient in fact to establish the claim that Binghamton Warehouse and Terminal, Inc., was the agent of Riss and Company.

The shipment was accepted by Binghamton Warehouse and Terminal, Inc., pursuant to U. S. Government bill of lading AF–9186714 (Defendant's Exhibit 1), in which Binghamton Warehouse and Terminal, Inc., was designated as the initial transportation company. In this bill of lading Middletown, Pennsylvania, was designated as the shipping point; Tinker Air Force Base, Oklahoma, was designated as the destination of the shipment; Binghamton Warehouse and Terminal, Inc. (by initials) via Riss and Company was designated as the route of the shipment. The shipment proceeded without incident until the train wreck and fire in Missouri resulting in destruction of the trailer and its contents.

At this point the parties to this action began to act in a manner not wholly in keeping with the legal relationship existing between them.

At a part of its service, Riss and Company (having no idea that the value of the contents of the trailer would exceed $100,000), undertook to adjust claims for damage to the cargo destroyed in the train wreck and fire including its own claim for trailer damage and the claims of the United States and other shippers. This adjustment was apparently undertaken as a service to the shippers, and in reliance upon the indemnity agreement with M-K-T Railroad providing for reimbursement up to $100,000 for the contents of any one trailer.

This indemnity agreement is contained in paragraph 5(a) of Exhibit A attached to the answer of the third party defendant, M-K-T Railroad.

After the train wreck Riss and Company repeatedly solicited the filing of a claim for damages by the United States, stating, over the signature of its general freight claims agent, that Riss and Company had "been trying to hurry the claim along, that the matter might be concluded with the carrier at fault". (Defendant's Exhibit 6, letter of May 19, 1959.) The processing of the claims of the United States (and others whose property was damaged or destroyed in the casualty) was proceeding without controversy in accordance with this voluntary undertaking of Riss and Company until Riss and Company learned that the Government calculated the value of the lost cargo at over $200,000. Upon learning of the value of the cargo claimed by the Government, Riss and Company turned the claim over to its legal department. Counsel for Riss and Company, on August 17, 1959, wrote the Air Force Accounting and Finance Center that the amount of the claim "comes as quite a shock and I have just now revived sufficiently to write this letter". (Defendant's Exhibit 7). Arrangements were made for further negotiations.

Thereafter, Riss and Company began to assert various defenses to the Government's claim.

Thereafter, Riss and Company refused to pay the Government's claim. Then, over the objection of Riss and Company, the Government began to make deductions from transportation charges earned by Riss and Company in the carriage of other goods, and continued to make these deductions until the total amount deducted equalled $88,076.48. So far as this record shows, the Government has not made a claim nor proceeded against Binghamton Warehouse and Terminal, Inc., as the initial or receiving carrier under the Carmack Amendment, Title 49 U.S.C.A. § 20(11).

Riss and Company had issued a freight bill covering the charges involved in the carriage. (Defendant's Exhibit 3). This was in accordance with custom in the industry, which required Riss and Company to account to the other carriers for their proportionate part of the charges.

█ The issuance of the freight bill (Defendant's Exhibit 3) by Riss and Company may have led the accounting authorities of the United States to believe that Riss and Company was the initial carrier. However, this assumption is not justified under the facts and the applicable law. Moreover, there was

nothing in the freight bill indicating that Riss and Company was the initial or delivering carrier. Reference was made therein to the Government bill of lading naming Binghamton Warehouse and Terminal, Inc., as the initial carrier, and in the charges for carriage submitted in the freight bill, reference was made (by initials) to the interest of Binghamton Warehouse and Terminal, Inc.

Because the Government was withholding revenue from Riss and Company on account of the claim, and because the M-K-T Railroad was willing to adjust the claim for cargo loss (regardless of ownership) with Riss and Company (under the indemnity agreement with the $100,000 limit), Riss and Company proceeded in April of 1961 to settle with the M-K-T Railroad for the destruction of the cargo owned by the Government. In addition, Riss and Company collected damages for the destruction of the trailer owned by it. The payment of this $100,000 by M-K-T Railroad to Riss and Company for loss of the cargo belonging to the United States, was effected by a cash payment and a credit on an account owing M-K-T Railroad by Riss and Company, all in the total sum of $100,000. This payment resulted from a mistake concerning the interest of Riss and Company in the cargo, and concerning its authority to demand payment therefor. If Riss and Company is not liable to the Government for the destruction of the cargo, then Riss and Company has been unjustly enriched in the sum of $100,000, at the expense of either M-K-T Railroad or of the United States, depending on the party ultimately sustaining the loss.

Under the evidence in this case it appears that Riss and Company did not voluntarily choose to accept responsibility for the total loss to the Government and did not freely and voluntarily choose to look to the M-K-T Railroad for reimbursement for damage to the property of the Government. Riss and Company was willing to adjust the claim with the "carrier at fault" (M-K-T Railroad) for the Government and other shippers, when it believed that the indemnity agreement would provide protection for all parties. When Riss and Company learned that the Government's claim was more than twice the limits of the indemnity agreement, it undertook to dispute the Government's claim against Riss and Company on various grounds, including a claim that Binghamton Warehouse and Terminal, Inc., was the initial carrier. (Defendant's Exhibit 6, letter of July 11, 1960, to U. S. General Accounting Office).

Riss and Company objected to the deductions of the damage from other sums admittedly owing by the Government, all without avail. Consequently, in June 1961, Riss and Company filed a complaint in this case seeking judgment against the United States for the deductions made up to that time. By supplemental complaint recovery of the deductions made after filing of the complaint have been sought.

## JURISDICTION

This Court has jurisdiction of the cause under Title 28, U.S.C.A. § 1346 (a) (2).

## FINDINGS OF ULTIMATE FACTS

1. The Court finds as a fact that the initial and receiving carrier in this case is Binghamton Warehouse and Terminal, Inc.

2. The Court finds as a fact that the plaintiff Riss and Company never received actual or constructive possession of the property of the United States shipped under bill of lading AF–9186714; that said property was destroyed while in the possession of the connecting carrier M-K-T Railroad.

3. The Court finds as a fact that Riss and Company has received from M-K-T Railroad $100,000 as of April, 1961, for damage to property of the United States.

4. The Court finds as a fact that Riss and Company did not waive its immunity from liability under the Carmack Amendment for loss or damage to the property shipped under bill of lading AF–9186714.

## CONCLUSIONS OF LAW

1. The Court concludes, as a matter of law, that the plaintiff Riss

and Company is not the initial or receiving carrier under the Carmack Amendment, and is not liable as such carrier for the damage to the property of the United States shipped under Government bill of lading AF–9186714, which was destroyed while being carried by the M-K-T Railroad. United States v. Mississippi Valley Barge Line (C.A.8), 285 F.2d 381, relied upon by the defendant supports the conclusion that Riss and Company was not the initial carrier. In that case the Barge Line was named in the bill of lading as the initial carrier and held responsible as such. In the case at bar, the bill of lading named Binghamton Warehouse and Terminal, Inc. as the initial carrier, and the evidence extrinsic of the bill of lading indicates that the bill of lading correctly described the underlying facts.

■■■ 2. The Court concludes as a matter of law that Riss and Company is not the delivering carrier under the Carmack Amendment; that under the Carmack Amendment the delivering carrier is one who receives actual or constructive possession of a shipment in interstate commerce for delivery to the consignee; that a delivering carrier is not one who might have or would have received possession of such a shipment for delivery to the consignee, but did not receive possession because of damage or destruction of the shipment while in the hands of a connecting carrier. At common law the delivering carrier was one who received actual or constructive possession of the cargo for delivery. Brunk v. Ohio & K. Ry. Co. (1907), 127 Ky. 304, 105 S.W. 443. The Carmack Amendment did not change this rule.[1] Saxon Mills v. New York, New Haven & Hartford R. Co. (1913), 214 Mass. 383, 101 N.E. 1075, [13 C.J.S. Carriers § 422, p. 921]. 1075 l.c. 1080, decided under the Carmack Amendment; In none of the cases cited by the parties or collected in the annotation to Section 20(11), Title 49 U.S.Code Annotated, Note 334, has liability been imposed, as a delivering carrier, upon a carrier who failed to receive actual or constructive possession of the shipment. In Louisiana Southern Ry. Co. v. Anderson, Clayton & Co., (C.A. 5) 191 F.2d 784, 187 F.2d 908, 1951, relied upon by the defendant, the shipment was actually delivered to the defendant railway company, but the carrier delivering was a switching carrier expressly excluded from liability under the amendment. The case is not in point. In other cases where liability was imposed the

1. Generally speaking (without passing on the office and nature of the presumptions involved) the Carmack Amendment (sometimes referred to as the Cummins Amendment) originally changed the common law liability of the initial carrier only. Roberts, Federal Liabilities of Carriers § 386, at 751 (2d ed. 1929) (ignoring the 1927 amendment; 9 Am. Jur. Carriers § 914, at 993; 13 C.J.S. Carriers § 424b(2), at 929–30; Oregon-Washington Railroad & Navigation Co. v. McGinn, 258 U.S. 409, 42 S.Ct. 332, 66 L.Ed. 689; See also Lust, The Law of Loss and Damage Claims 127 (1916); 2 Moore on Carriers § 11, at 749–55 (2d ed. 1914); 2 Watkins on Shippers and Carriers § 440, at 1198–99 (3d ed. 1920); Mexican Light & Power Co. v. Texas Mexican Railway Co., 331 U.S. 731, 67 S.Ct. 1440, 91 L.Ed. 1779.

In 1927 the Act was further amended to expressly provide that the delivering carrier was subject to the same liability as the initial carrier. 44 Stat. 1448. This amendment did not impose liability upon a carrier who never received actual or constructive possession of any part of the goods shipped.

The history of the amendment is summarized in the comprehensive opinion by Judge Blackmun in United States v. Mississippi Valley Barge Line Co. (C.A. 8), 285 F.2d 381. In that case the barge line was the initial carrier named in the bill of lading and actually the contracting carrier. It was held to be the initial carrier within the meaning of the Carmack Amendment.

Although the shipment in this case was not made upon a standard commercial form bill of lading, but on a special United States Government form, paragraph 2 of the general conditions of the government form provides that the bill of lading is subject to the same rules and conditions as govern commercial shipments made on the usual forms provided by the carrier, unless otherwise specifically provided. There is no specific provision in this case which purports to impose liability upon Riss & Company as the anticipated delivering carrier.

delivering carrier received possession for delivery of all or part of the shipment in question.[2] Furthermore, it is not established that Riss and Company would have made the delivery to the consignee if the cargo had not been destroyed.

■ 3. Under the Carmack Amendment the fact that the initial carrier designated in the bill of lading uses equipment belonging to a connecting or other carrier does not make the owner of the equipment the initial carrier. Watterson v. New York Central Railroad Co., 6 Cir., 235 F.2d 114; Lino v. Northwestern Pac. R. Co. (1928), 332 Ill. 93, 163 N.E. 316. Therefore, the fact that a trailer belonging to Riss and Company was provided for use of Binghamton Warehouse and Terminal, Inc., does not make Riss and Company the initial carrier.

■ 4. The Court concludes, as a matter of law, that Riss and Company has been unjustly enriched in the sum of $100,000 and interest, which it received in April, 1961, from the M-K-T Railroad, and that the defendant United States is entitled to credit therefor in law and in equity, upon principles of subrogation and unjust enrichment. Re-

statement, Restitution, Section 1; Atlantic Coast Line Railroad Co. v. Florida, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451; and is entitled to recover the balance remaining after crediting on this sum of $100,000, the shipping charges owed by the Government.

5. The Court concludes, as a matter of law, that it is not material to a disposition of this case to determine whether or not the claim of the Government against Riss and Company is barred by limitations, statutory or contractual.

■ 6. The Court concludes, as a matter of law, that by undertaking to settle the claim of the United States with the carrier at fault, Riss and Company did not become liable for said claim, under the circumstances of this case, including, but not limited to, the involuntary character of the action by Riss and Company induced by the retention of earned revenues by the defendant United States.

It is hereby

ORDERED that this cause be set for trial and final disposition on October 22, 1962, unless judgment is entered sooner on notice to the parties at pretrial hearing or conference.[3]

2. The designation of the delivering carrier in the bill of lading is not conclusive. For instance, a carrier who accepts all or part of the cargo for delivery has been held liable as the delivering carrier under the Carmack Amendment even though it is not named as a carrier in the bill of lading. Keystone Motor Freight Lines v. Brannon-Signaigo Cigar Co. (C.A.5) 115 F.2d 736. However, designation of a carrier as a delivering carrier in the bill of lading may be very important in determining whether a carrier (actually accepting all or part of the cargo for delivery) is an agent of the carrier which is designated in the bill of lading as the contemplated delivering carrier and which has received possession of the cargo for delivery. Missouri Pacific R. R. Co. v. Reynolds-Davis Grocery Co., 268 U.S. 366, 45 S.Ct. 516, 69 L.Ed. 1000. Similarly, a carrier not named in the bill of lading receiving possession of the cargo is liable as a connecting carrier, for the fact that it "was not named in the bill of lading is unimportant." Galveston Wharf Co. v. Gal-

veston H. & S. A. R. Co., 285 U.S. 127, 52 S.Ct. 342, l. c. 344, 76 L.Ed. 659, l. c. 662.

3. After the entry of this memorandum and order the plaintiff filed a supplemental complaint claiming additional shipping charges withheld by the defendant during the pendency of this suit. This supplemental complaint brought the total shipping charges claimed to have been withheld, and admitted by the government to have been withheld, to the sum of $127,405.51, and made it evident that final judgment would be for a net balance in favor of Riss and Company.

On October 22, 1962, the cause came on for hearing before the Court sitting without a jury.

On November 1, 1962, additional findings of fact and conclusions of law concerning the accounts between the parties were made and a judgment was entered for the plaintiff Riss & Company, Inc., and against the defendant, the United States of America, in the amount of $30,-934.87, consistent with the foregoing memorandum opinion.