**SEASON–ALL INDUSTRIES, INC., Plaintiff,**

v.

**MERCHANT SHIPPERS, Defendant and Third-Party Plaintiff,**

v.

**BREMAN'S EXPRESS, INC., et al., Third-Party Defendants.**

Civ. A. No. 74–264.

United States District Court, W. D. Pennsylvania.

Aug. 10, 1976.

Paul H. Titus, Kaufman & Harris, Pittsburgh, Pa., for defendant and third-party plaintiff.

Thomas J. Reinstadtler, Jr., Egler, McGregor & Reinstadtler, Pittsburgh, Pa., for plaintiff.

Edward Goldberg and George H. Hoffman, Pittsburgh, Pa., for Breman's Express, Inc.

Gary F. Sharlock, Sharlock & Repcheck, Pittsburgh, Pa., for Baltimore & Ohio R. Co.

Aloysius F. Mahler, Pittsburgh, Pa., for Pa. R. Co. and Penn Central Transp. Co.

Frederick J. Francis, Meyer, Unkovic & Scott, Pittsburgh, Pa., for Burlington Northern, Inc.

Blair Griffith, U. S. Atty., Pittsburgh, Pa., for Alaska R. Co.

## OPINION

WEBER, District Judge.

Plaintiff, a manufacturer of storm windows in Indiana, Pennsylvania, agreed with a contractor to furnish storm windows to be installed at Eielson Air Force Base, Fairbanks, Alaska. Plaintiff made arrangement with the defendant, Merchant Shippers, a freight forwarder, for shipment of said windows. The function of a freight forwarder is to arrange for the shipment of goods by various common carriers from the point of origin to the point of destination.

Merchant Shippers secured the use of five "piggy back" trailers from the Baltimore & Ohio Railroad and two "piggy back" trailers from Penn Central Railroad and directed Breman's Express, a common carrier by motor truck, to deliver the trailers from the respective railroad yards to plaintiff's plant in Indiana, Pennsylvania, for loading by plaintiff, and subsequent transport by Breman to the terminal of the defendant Merchant Shippers in Pittsburgh, and thence to the Pittsburgh terminals of the aforesaid railroads. On picking up the loaded trailers at plaintiff's plant in Indiana, Pennsylvania, Breman's issued a bill of lading for the goods with a destination point of Fairbanks, Alaska.

The trailers were received under seal by the Baltimore and Ohio Railroad and the Penn Central Railroad at their terminals in Pittsburgh and were transported on flat cars to Chicago where they were picked up by the Burlington Northern Railroad. The Burlington Northern Railroad transported them to Seattle, Washington, where the Burlington Northern Railroad delivered them to a terminal of defendant Merchant Shippers. Defendant Merchant Shippers proceeded to break the seals on the trailers, unload each trailer and load the merchandise into boxcars. The boxcars were then switched by the Burlington Northern Railroad to the dockside of Puget Sound Tug & Barge Company where they were loaded on barges for shipment to Alaska. In Seattle at the time of unloading the trailers, substantial damage to the storm windows was discovered.

The boxcars were transported by Seattle Tug and Barge Company by water to Whittier, Alaska, where they were delivered to the Alaska Railroad Company and transported to Fairbanks, Alaska. At their destination, the boxcars were unloaded by representatives of the plaintiff, Season-All, and the damage observed. The cars were returned to the Seattle terminal of Merchant Shippers.

The trailers were shipped under seal from Indiana, Pennsylvania, to Seattle, where they were opened and reloaded into box-cars. The boxcars were again placed under seal at the Merchant Shippers terminal in Seattle and remained under seal until their arrival at the destination in Alaska.

Although an original bill of lading had been given to plaintiff Season-All at Indiana, Pennsylvania, by a representative of Breman's Express acting on behalf of Merchant Shippers, Merchant Shippers also received bills of lading from the connecting carriers. For the carriage from Seattle to the destination a new bill of lading was issued designating the point of origin as Seattle, the destination as Fairbanks, Alaska, and the route via Puget Sound Tug & Barge (Alaska Hydro-Train) and Alaska Railroad Company.

The plaintiff Season-All brought suit against Merchant Shippers, the freight forwarder, for the damage to the goods. Merchant Shippers has joined as third party defendants all of the common carriers involved in the transportation of the goods. Three of these, Breman's Express, Inc., Burlington Northern, Inc. and Alaska Railroad Company have moved for summary judgment. All motions for Summary Judgment are based in part on the effect of the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11). The Carmack Amendment imposes liability on an initial carrier or a delivering carrier for damage done in the course of an interstate shipment, where goods move in interstate commerce on a through bill of lading. Merchant Shippers, as a freight forwarder, is required to issue its own bill of lading to its customer, Season-All, 49 U.S.C. § 1013. In turn, a common carrier gives a freight forwarder a bill of lading which governs the rights of the freight forwarder with respect to the particular carrier. We will consider each of the summary motions individually.

### ALASKA RAILROAD

We conclude that Summary Judgment must be granted for third party defendant Alaska Railroad Company because:

1. There is no evidence that any damage to the goods occurred on its own line. It was the terminal carrier on a through ship-

ment originating in Seattle from Merchant Shippers, via Puget Sound Tug and Barge Co. and Alaska Railroad. It has produced evidence that substantial damage to the goods were discovered in Seattle prior to the reshipment to Alaska.

Merchant Shippers does not deny this but merely responds that Plaintiff asserted that the goods were in good condition when they reached Seattle and, therefore, if plaintiff should establish this fact despite overwhelming evidence to the contrary, this would establish delivery in good condition to the initial carrier (Puget Sound) and establish the presumption.

■ Rule 56 requires that when faced with evidentiary support, an opposing party may not rely on mere averments of its pleading, but must come forward with evidence to show the existence of a genuine issue of material fact. We believe that this applies similarly to reliance on some other party's assertion. We believe that Rule 56 requires that Merchant Shippers now come forward with some evidence that the goods were delivered in Seattle to Puget Sound in good condition. This it has not done, and probably, in the face of the "overwhelming weight of the evidence that the damage had occurred prior to reaching Seattle" (Merchant Shipper's Brief p. 10), it cannot be done.

" . . . an issue of fact raised by a pleading is a phantom issue when it is clearly established what the material facts are and that there is no genuine issue as to them." 6 Moore's Federal Practice ¶ 56.15[2] at p. 463.

The evidence produced by Alaska Railroad both rebuts the common law presumption that goods are injured on the line of the last carrier by showing that goods were injured elsewhere than on its own line, and also establishes that the goods were not delivered to an initial carrier in Seattle in good condition.

2. If the Carmack Amendment applies to the Alaska Railroad there must be evidence of an interstate shipment on a through bill of lading. *Chicago & N. W.*

*Ry. Co. v. Whitnack Co.,* 258 U.S. 369, 371–72, 42 S.Ct. 328, 66 L.Ed. 665 [1921].

■ The bill of lading for the carriage performed by Alaska Railroad, was the bill of lading given by Puget Sound Tug & Barge to Merchant Shippers upon receipt of the goods at Seattle for shipment to Fairbanks, Alaska. In all events, the act of Merchant Shippers in taking the goods out of their shipment from Pennsylvania to Alaska by unloading the cargo from trailers to box cars in Seattle breaks the continuous shipment under any bill of lading issued in Pennsylvania and constitutes a new shipment beginning in Seattle.

■ 3. Merchant Shippers, as a shipper, to recover from Alaska Railroad, must show (a) delivery in good condition to the initial carrier (Puget Sound); (b) arrival in a damaged condition from the terminal carrier (Alaska Railroad); and the fact of damage during carriage. This is so both under common law and Carmack Amendment liability. *Missouri Pac. R. Co. v. Elmore & Stahl,* 337 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 [1964].

The evidence produced by Alaska Railroad shows that it is impossible for Merchant Shippers to show what damage, if any, occurred during the carriage from Seattle to Fairbanks, because it cannot establish the extent of damage which had already resulted prior to the delivery to the initial carrier in Seattle. From the evidence produced we cannot find that Merchant Shippers is able to show that any damage to the goods occurred between Seattle and Fairbanks.

■ Even though not essential to our foregoing conclusions we find that the Alaska Railroad Company is not subject to the Interstate Commerce Act and in particular to the Carmack Amendment to that Act. Nor do we find that the Alaska Railroad Company has waived its right to move for summary judgment on this defense by reason of any failure to plead the defense affirmatively in its answer. There was no allegation of liability under the Carmack Amendment made against it in the Third

Party Complaint, and its general denial was a sufficient answer. But we find that this objection is not a proper one in a response to a motion for summary judgment. 6 Moore's Federal Practice ¶ 56.17[14] holds this objection

> "not tenable in view of the general purposes of the Rules that decision should go on the merits and not on pleading technicalities, and for the further reason that the Rules prescribe most liberally for the amendment of pleadings."

## BURLINGTON NORTHERN, INC.

Burlington Northern is either an intermediate connecting carrier under a through bill of lading issued by Breman's Express in Indiana, Pa. or was a single carrier under a rail bill of lading from Chicago to Seattle.

■ As an intermediate connecting carrier under the through bill of lading, Burlington Northern cannot be liable to Merchant Shippers under the Carmack Amendment. *Litvak Meat Co. v. Baker,* 446 F.2d 329, 335 [10th Cir. 1971].

■ With respect to Merchant Shippers' claim against Burlington Northern based on the rail bill of lading issued by Burlington Northern upon receipt of the goods at Chicago, Merchant Shippers must show certain facts to support its claim of common law liability against Burlington Northern as an intermediate carrier:

(1) Merchant Shippers must prove that the trailers were open for inspection by Burlington Northern.

The evidence produced by Burlington Northern is uncontradicted that the trailers were sealed at the time of their receipt by Burlington Northern. *Blue Bird Food Products Co. v. B & O R.R. Co.,* 492 F.2d 1329 [3rd Cir. 1974] held that when a consignee has tendered a shipment under seal to a carrier by a representation on the bill of lading of "apparent good order" it cannot rely on the representation in the bill of lading but instead must establish by direct evidence that the goods were delivered to the carrier in good order. (p. 1332)

(2) Merchant Shippers' claim for common law liability against Burlington Northern must be based on Burlington Northern's negligence:

> "the liability of a connecting carrier has not been changed by the Carmack Amendment but that such carrier may be liable under the common law but only for its own negligence." *Galiger Trading Co. v. Chic. N. W. Ry. Co.,* 184 F.2d 876, 880 [7th Cir. 1950].

Merchant Shippers has not come forward in response to the motion for summary judgment that it has any evidence to support a claim of negligence against Burlington Northern.

The allegation that Burlington Northern was an "initial" carrier on a shipment consigned to Alaska by reason of its issuance of a rail bill of lading for goods received in Chicago, or by reason of its switching operation in Seattle in delivering the cars to the pier of Puget Sound, is not supported by any evidence. The overwhelming evidence shows carriage by several carriers from Indiana, Pennsylvania, to Pittsburgh, Pennsylvania via Breman's Express; from Pittsburgh to Chicago via Penn Central and B & O; from Chicago to Seattle by Burlington Northern; from Seattle to Alaska by Puget Sound Tug & Barge, and in Alaska by Alaska Railroad. Merchant Shippers has produced no evidence in response to the motion for summary judgment to support an issue of fact as to this contention:

> " . . . by 'initial' carrier is meant the one who first contracts to transport the shipment from one state to another and not the one who first merely receives or handles it in some incidental or subsidiary way . . . " *United States v. Mississippi Valley Barge Line Company,* 285 F.2d 381, 393 [8th Cir. 1960].

## BREMAN'S EXPRESS

The argument of Breman's Express is that it cannot be liable to Merchant Shippers as a carrier because it was the agent of Merchant Shippers. It alleges that its only responsibility was under a cartage agreement with Merchant Shippers which re-

quired it to pick up certain empty trailers, haul them to the premises of the plaintiff at Indiana, Pennsylvania, for loading by the plaintiff and then to haul them to the premises of Merchant Shippers in Pittsburgh. The trailers were loaded at plaintiff's plant "Shippers Load and Count" which meant that the plaintiff controlled the method of loading and itemizing the goods. The plaintiff prepared a bill of lading which the employee of Breman's signed as the agent of Merchant Shippers.

The position of Breman's that its agency relationship to Merchant Shippers precludes it from liability as a carrier is not well-founded. Merchant Shippers does not deny that, as to the plaintiff Season-All, Breman's was Merchant Shippers' agent. However, as the agent of a freight forwarder, Merchant Shippers, Breman's may still occupy the position of an initial carrier under the Carmack Amendment, 49 U.S.C. § 20(11).

The controlling case in this field is *Chicago, Milwaukee, St. Paul & Pacific Railroad Co. v. Acme Fast Freight,* 336 U.S. 465, 69 S.Ct. 692, 93 L.Ed. 817 [1949]. The court there held that although freight forwarders were treated as initial carriers in relationship to the owner-shipper of the goods, as to other carriers they were still to be treated as shippers.

The forwarder thus has some of the characteristics of both carrier and shipper. (p. 467, 69 S.Ct. p. 693).

Merchant Shippers as freight forwarders made all the arrangements with the owner-shipper, Season-All, to arrange for the delivery of the goods in question from the owner-shipper's Indiana, Pa. plant to Alaska. In *Acquascutum of London, Inc. v. American Champion,* 426 F.2d 205 [2nd Cir. 1970], the court recognized the dual role of the freight forwarder who charges a single rate covering an entire transportation of goods and holds itself out "not merely to arrange with common carriers for the transportation of goods, but rather to deliver them safely to the consignee" without the shipper even knowing which carrier would be used to transport his goods. It

makes no difference that separate bills of lading were received by the freight forwarder for later stages of the transportation by individual carriers after Merchant Shippers had received the goods from Breman's Express in Pittsburgh. This would not relieve Breman's Express from liability as the initial carrier under the Carmack Amendment, 49 U.S.C. § 20(11). *Mexican Light & Power Co. v. Texas Mexican Ry. Co.,* 331 U.S. 731, 67 S.Ct. 1440, 91 L.Ed. 1779 [1947], and *Missouri K. & T. R. Co. v. Ward,* 244 U.S. 383, 37 S.Ct. 617, 61 L.Ed. 1213 [1917].

Therefore, under *Acme,* Merchant Shippers occupies two positions. While it is freight forwarder as to plaintiff Season-All, as to Breman's Express it is a shipper. In its relation to Breman's Express as a shipper the agency of Breman's Express for Merchant Shippers in its dealings with plaintiff Season-All is irrelevant.

Under all of the evidence produced here, which appears to be substantially without dispute, it would appear that Breman's cannot escape the allegations of Merchant Shippers that Breman's Express was the initial carrier. The liability of 49 U.S.C. § 20(11) applies regardless of whether Breman's own involvement was only as to an intrastate shipment because the bill of lading was issued by Breman's Express for an interstate shipment. *Hamilton v. Dean, Van Lines, Inc.,* 228 F.Supp. 671 [E.D.Pa. 1964]. The provisions of the Carmack Amendment are fully applicable to a motor vehicle carrier that is involved in the initial transportation of the particular shipment in question, 49 U.S.C. § 319.

Therefore, Merchant Shippers as a third-party plaintiff has alleged a prima facie case against Breman's Express which Breman must meet under the Carmack Amendment. Breman's Express as the initial carrier is liable for damage whether such damage occurred while in its hands or in the hands of one of the connecting carriers. *Litvack Meat Co. v. Baker,* 446 F.2d 329 [10th Cir. 1971].

Factual issues remain to be tried between the plaintiff and the defendant Merchant Shippers and the third-party defendant Breman's Express. These involve the question of whether the freight was in good condition and properly loaded and packaged when it was tendered by Season-All to Breman's Express. If Season-All cannot meet its burden on this point in its claim against Merchant Shippers, then the third party claim of Merchant Shippers must fall, but if Season-All should prevail the proof would establish delivery in good condition to the initial carrier. The motion of Breman's Express for Summary Judgment will be denied.

Penn Central Transportation Company and Baltimore and Ohio Railroad Company have not moved for Summary Judgment on this record but it appears to the court that their alleged liability would rest upon the same grounds as is asserted against Burlington Northern. Unless Merchant Shippers can come forward with additional evidence to show the existence of a genuine issue of material fact relevant to their liability the motions of these carriers for summary judgment on the claim of Merchant Shippers would be granted.